[Civ. No. 8453. Third Dist. June 23, 1955.]

DAN W. LEWIS et al., Respondents, v. ALBERT L. JAMES et al., Appellants.

Alfred E. Frazier and Robert D. James for Appellants.

Stanley Pugh and Donald B. Webster for Respondents.

SCHOTTKY, J.—In 1949 plaintiff Dan W. Lewis, who had been a truck gardener in Tehama County for many years, and his wife, Helen, were occupying a tract of land as lessees under a lease with an option to purchase.

On August 2, 1950, plaintiffs and defendants entered into a written memorandum of agreement whereby plaintiffs, sellers, agreed to exercise their option under the Dyer lease, and defendants, buyers, agreed to pay the purchase price of $30,000 and take title thereto, paying plaintiffs the sum of $4,000 in addition to the purchase price. It was also agreed that defendants as buyers were "to execute and deliver to the Sellers immediately upon the consummation of the aforesaid sale a Lease of the premises upon the same terms as the present lease from Mrs. Dyer, without any options, and subject to adjustment of the rental on an acreage and pro-rata

basis to allow for land to be used by the Buyers and which cannot be used by the Sellers, it being understood that the Buyers intend to plant orchard and that there will be a progressive limitation of use by the Sellers and Lessees.''

Under the Dyer lease the lessees were requird to pay rental in the total amount of $1,200, payable ''$600.00 upon the execution of this Lease, receipt whereof is hereby acknowledged; and the balance on or before the 15th day of August, 1950.''

The sale to defendants was consummated on September 5, 1950, but no lease was executed by defendants to plaintiffs, and plaintiffs commenced an action to recover damages from defendants, alleging, among other things, that it became necessary for plaintiffs to rent other lands at a higher rental, to their damage in the sum of $5,000.

Defendants in their answer admitted the agreement with plaintiffs but denied any breach thereof. The answer also set up two separate defenses: one, that plaintiffs were obligated to pay a rental of $600 upon the execution of a lease and failed to do so; the other, that plaintiffs had abandoned and disaffirmed the portion of the agreement providing for a lease.

The case was tried by the court sitting without a jury. The court found, among other things, that the plaintiffs had fully performed all their obligations under the provisions of the memorandum of agreement; that defendants had failed and refused to execute, deliver or tender a lease of the premises in accordance with the terms of said agreement; that said failure and refusal were without any legal cause, excuse or justification, and constituted a breach of the agreement by the defendants; that as a direct and proximate result of said breach plaintiffs were damaged in the sum of $2,100; and that plaintiffs were not obligated to pay or tender to defendants the rental of $600 at any time prior to the execution and tender by defendants of the lease required of them under the contract, and that plaintiffs were at all times ready, willing and able to perform all their obligations under the lease that they were entitled to receive. Judgment was entered in favor of plaintiffs for $2,100 in accordance with said findings, and defendants have appealed from said judgment.

Appellants make three major contentions in arguing for a reversal of the judgment: (1) That the complaint did not state a cause of action; (2) that the evidence is insufficient to support the findings; and (3) that the court applied an

incorrect measure of damages. Before discussing these contentions we shall set forth additional facts shown by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of respondents.

On September 5, 1950, plaintiffs were still in possession of the premises, with produce yet to be harvested, and remained in possession until October 10, 1950, at which time plaintiff had finished harvesting and told defendant that he could "have it." Plaintiffs' son continued to occupy the dwelling on the premises, at least until the latter part of 1950, but after October, 1950, plaintiff Dan Lewis did no farming. At the trial said plaintiff at first insisted that the reason he did not commence cultivation, according to usual practice after the first rains in December, was that defendant's extensive leveling operations prevented him from so doing, but later, on cross-examination, plaintiff admitted that the only thing that kept him from going on the land and planting it to crops was the lack of a written lease. According to the testimony of defense witnesses, there was little leveling done prior to January, 1951, only to the extent of discing and staking of some 20 acres on the south, and no extensive leveling was done until April, 1951, and plaintiff admitted on cross-examination that he could not estimate how many acres were being worked by defendant in December, 1950.

Regarding negotiations for the execution of a lease back to plaintiffs after the sale, the record indicates that early in December, 1950, defendants' attorney wrote to plaintiff Dan Lewis advising him that defendant Albert James would be there on December 14, and asking plaintiff to come to his office with a list of the desired modifications in the lease. Later in the same month defendents' attorney again wrote to plaintiff, enclosing in the letter a draft of a proposed lease. In response thereto, plaintiff went to counsel's office and with the aid of a secretary wrote a letter to defendant Albert James, dated December 28, 1950, explaining that "since the ground is now very wet, if it is leveled at this time, this operation would sour the ground so that it would not be usable for the purpose of raising garden this year. Also, the way the leveling stakes are marked, in some sections as much as twenty-four inches of top soil would be removed in the leveling, which would make this area unsuitable for raising garden this season. In fact, if more than six inches of top soil is removed, the ground would not be good for gardening the first year. Since

the year has been so wet, it would seem to me best for you to rent this land to someone else who might be interested in raising grain or some other crop for this year; I would be interested in having it next year, however.''

The above and subsequent correspondence between the parties was to no avail, and plaintiff ultimately leased other land of comparable size and type. Regarding the contents of the draft of the proposed lease sent to plaintiff in December, 1950, plaintiff testified that in many respects it was detrimentally dissimilar to the Dyer lease. As a witness, defense counsel testified that at no time did plaintiff make any objections to any provision in the draft and that he had never indicated specifically what changes were desired.

Additional evidence will be set forth in the course of this opinion.

Appellants' first contention that the complaint did not state a cause of action because it did not allege a tender of the $600 rental payment cannot be sustained.

The pertinent portions of the memorandum of agreement are as follows:

''WHEREAS, it is the desire of the Sellers herein to sell to the buyers, and the Buyers to buy said premises for a total cash purchase price of $34,000, with the additional consideration of a lease to the above-named Sellers for a period of two (2) years.

. . . . . . . . . . . . .

''Buyers further agree to execute and deliver to the Sellers immediately upon the consummation of the aforesaid sale a Lease of the premises upon the same terms as the present lease from Mrs. Dyer. . . .''

The contract, for the breach of which respondents sought damages, was an agreement to sell. The agreed exchange consisted of the promise by respondents to exercise their option to purchase and thereafter execute and deliver to appellants a deed conveying the title to the premises, and the promise by appellants to advance through escrow the money required to exercise said option ($30,000), to pay respondents the balance of the purchase price provided ($34,000), and to execute and deliver to respondents a lease of the premises upon the same terms as the Dyer lease. To fully perform their part of the agreed exchange appellants were required to execute a lease. If any such lease were executed then it could possibly be said that delivery thereof was concurrently conditional upon payment or tender of the rental therein required. █ But in

the agreement sued upon nothing further was required of respondents than that they exercise their option and execute and deliver a deed of the premises, and until the relationship of lessor-lessee was created by the execution of a leasing contract, no duty, conditional or unconditional, was placed upon respondents to pay rental. In such case an allegation of tender of payment allegedly due under a leasing contract not yet in existence would have been entirely superfluous, and a failure to so allege would not defeat the cause of action stated in the plaintiffs' complaint. (See *de la Falaise* v. *Gaumont-British Picture Corp.*, 39 Cal.App.2d 461, 470 [103 P.2d 447].)

Appellants next contend that the evidence is insufficient to support findings numbers 6, 7 and 9. In finding 6 the court found in part that ''Plaintiffs have fully performed all of their obligations under the provisions of said agreement.'' Finding 7 is in part that ''the failure and refusal of defendants to execute and deliver to plaintiffs a lease . . . constituted a breach of said agreement on the part of said defendants.'' Finding 9 is that ''all of the allegations of the first and second affirmative defenses alleged on page 2 of defendant's Amended Answer herein are and each of them is untrue.''

As to finding 6 appellants argue that since respondents ''failed to pay the initial rental required by the basic lease which supplied all of the terms of the agreement,'' they had not performed all their obligations under the provisions of the agreement and this finding to the contrary is therefore unsupported by the evidence. There is no merit in this contention for, as hereinbefore pointed out, respondents were not required to tender or pay the rental until a lease was executed by appellants in accordance with the agreement. There is likewise no merit in appellants' contention that the evidence is insufficient to support finding 9 since the agreement, as properly construed by the court, created no obligation on the part of respondents to pay rental before a lease was executed by appellants.

Appellants' contention that ''finding No. 7 is not supported by the evidence because the evidence shows, without contradiction, that a draft of lease was submitted to plaintiffs and that plaintiffs did nothing in response thereto and did nothing to put defendants in default'' is but an argument as to the weight of the evidence. The evidence is sufficient to support this finding. The record shows that the only offer by appellants to perform their obligation to execute a lease back to respondents was in December, 1950, when they submitted a

draft of a proposed lease to respondents. At that time, according to the testimony of respondent Dan Lewis, objection was made to certain of the provisions therein contained which did not conform to the terms of the Dyer lease as called for in the agreement between the parties.

Since the draft of the proposed lease did not conform to the agreement of the parties, it may not be deemed an offer of performance. ■ For, an offer to perform upon terms and conditions not designated in the contract is not only not binding upon the offeree, unless he accepts the new conditions or fails to make objection thereto, but also is tantamount to a refusal to perform. (Civ. Code, §§ 1494, 1501; *Pitt* v. *Mallalieu*, 85 Cal.App.2d 77, 83 [192 P.2d 24]; *K. & M. Inc.* v. *LeCuyer*, 107 Cal.App.2d 710, 717 [238 P.2d 28]; *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 646 [160 P.2d 804].)

■ Furthermore, the agreement required that appellants, as buyers, execute and deliver a lease immediately upon consummation of the sale. The sale was completed upon September 5, 1950. Respondent testified that the planting of his crops usually took place right after the first rains in December. That respondents were entitled to a lease by that time, if not sooner, would seem to be a reasonable construction of this contract provision. A lease of the premises was part and parcel of the agreed exchange and a failure to perform in this regard, within the time reasonably contemplated by the parties, amounted to a failure of consideration, and was an actionable breach of the contractual relation. (*Bliss* v. *California Coop. Producers*, 30 Cal.2d 240, 248 [181 P.2d 639, 170 A.L.R. 1009]; *Buxbom* v. *Smith*, 23 Cal.2d 535, 548 [145 P.2d 305].)

■ Appellants contend also that the finding (number 10) that there was no abandonment, disaffirmance or surrender by respondents of rights under the agreement is not supported by the evidence. This contention cannot be sustained as it appears from the record that appellants did not execute a lease as agreed and further that appellants conducted operations on the land that interfered with respondents' contemplated use thereof. Under such circumstances respondents were justified in renting other land, and it cannot be held as a matter of law that their action in so doing constituted a surrender of their rights under their contract with appellants. At most, there was presented to the court an issue of fact upon which the evidence was conflicting.

Appellants contend finally that the trial court applied an incorrect rule as to the measure of damages. They argue that the correct rule of damages to be applied is the difference between the reasonable rental value, concerning which the record is silent, and the agreed rental, and that the trial court was in error in allowing respondents damages equal to the difference between the agreed rental and rent they had to pay for leasing other property.

The measure of damages for the breach of an obligation arising from contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code § 3300.) More specifically, the detriment caused by the breach of an agreement to lease is the difference between the agreed rental and the rental value for the term at the time of the breach, or, as sometimes expressed, "the fair value of the use of the premises." (*McCulloch* v. *Liguori*, 88 Cal.App.2d 366, 375 [199 P.2d 25] ; 14 Cal.Jur.2d p. 770.) In application of this general rule the courts have computed actual pecuniary damage by use of evidence relating to the rental value of similar property, as, for example, the allowance to the lessee in the McCulloch case of the difference between rental value of similar property at the time of the breach and the amount of monthly rental agreed on by the parties to the contract. In the instant case the court received evidence of the similarity between the premises in question and the Hoy property adjacent thereto which respondents leased, and awarded respondents damages in the amount of $2,100 for the season of 1951, representing the difference between the agreed rental and the rental charged by respondents' lessor Hoy.

We are satisfied that the instant case presented questions of fact for the trial court to determine and that the evidence amply supports the finding and judgment. There was evidence that the fair and reasonable market value of the property that respondents had an option to purchase for $30,000 was $40,000 on August 2, 1950, the date of the agreement between respondents and appellants. Under the agreement with respondents appellants secured said property for $34,000, and a substantial part of said agreement was "the additional consideration of a lease to the above-named Sellers for a period of two years." The evidence supports the determination of the trial court that appellants breached said agreement and re-

spondents were entitled to the damages awarded for said breach.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 15, 1955, and appellants' petition for a hearing by the Supreme Court was denied August 17, 1955.