[L.A. No. 29742. In Bank. Jan. 19, 1971.]

FOREMAN & CLARK CORPORATION,
Plaintiff, Cross-defendant and Appellant, v.
MADELEINE FALLON et al.,
Defendants, Cross-complainants and Appellants;
PHILLIP LYON, Cross-defendant and Respondent.

### Counsel

Gibson, Dunn & Crutcher, John L. Endicott and Samuel O. Pruitt, Jr., for Plaintiff, Cross-defendant and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz, Clarence S. Hunt, Michael F. Richman, Henry C. Rohr and Floyd H. Norris for Defendants, Cross-complainants and Appellants.

O'Melveny & Myers and Louis T. LaTourrette for Cross-defendant and Respondent.

### Opinion

SULLIVAN, J.—In this action for damages for breach of a lease, plaintiff and cross-defendant Foreman & Clark Corporation (hereafter plaintiff) and defendants and cross-complainants Madeleine Fallon, Floyd H. Norris and Martha B. Norris (hereafter defendants) separately appeal from a judgment entered after a nonjury trial awarding plaintiff certain amounts as damages and denying defendants all relief upon their cross-complaint.[1]

Plaintiff was engaged in the business of selling wearing apparel at retail. Defendants were the owners of a building in downtown Los Angeles. On October 20, 1964, after approximately seven months of negotiations, plaintiff as lessee and defendants as lessors entered into a written lease[2] of a portion of the ground floor, mezzanine, and basement of the building for a 15-year term beginning on January 1, 1966 and ending on December 31,

---

[1]The judgment also awarded cross-defendant Phillip Lyon his costs against defendants.

[2]Actually, as the trial court found, plaintiff entered into the lease with defendant Fallon who was the sole lessor signatory but defendants Norris, husband and wife, thereafter acquired interests as owners in the building, became parties to the lease and ratified and agreed to its terms.

1980. The lease provided for a fixed minimum rental of $3,750 per month ($45,000 per year) plus an additional rental per year of 5 percent of all gross receipts in excess of $900,000 in any lease year. Defendants failed to deliver possession of the premises to plaintiff on January 1, 1966, because one of the tenants then occupying a portion of the premises, whose lease expired December 31, 1966, refused to vacate.

Plaintiff commenced the instant action seeking specific performance and damages in separate counts. However, after leasing new premises elsewhere, it filed an amended complaint deleting the specific preformance count and praying only for damages for breach of lease, attorney fees and costs. Defendants filed a cross-complaint seeking relief for rescission of the lease based on plaintiff's misrepresentations, together with consequential damages, including the recovery from cross-defendant Lyon of the commission paid the latter as the broker in the transaction.

A bifurcated trial was held in which the court first heard evidence on the claims of misrepresentation contained in the cross-complaint. The trial court found that cross-defendant Lyon was the agent of plaintiff in negotiating the terms of the lease. After also finding as to each alleged misrepresentation that it was not material and not relied upon, and that there was no intention on the part of plaintiff or of cross-defendant Lyon to defraud defendants, the trial court heard evidence on the issue of the damages to be awarded plaintiff.

The trial court, in addition to making the above-mentioned findings on the issue of plaintiff's alleged fraud, also found that the difference between the lease rental and the fair rental value of the leased premises for the term of the lease at the time of the breach was the sum of $25,000; and that defendants failed to pay cross-defendant Lyon the balance of $5,750 of the agreed commission as broker in procuring a lessee for the space provided. The court awarded plaintiff $25,000 in general damages, $3,991.03 in special damages for amounts spent by plaintiff in preparing the premises for its use, and $20,000 in attorneys fees. Cross-defendant Lyon was awarded the remainder of his commission together with interest and costs. Defendants were denied relief on their cross-complaint.[3]

These appeals followed. Plaintiff, although appealing from the entire judgment, complains of only the inadequacy of the general damages awarded it. Defendants appeal from the entire judgment. We first consider defendants' appeal.

---

[3]The court concluded that by their statements and actions defendants had waived any right to rescind the lease and were estopped from maintaining the alleged causes of action of their cross-complaint.

DEFENDANTS' APPEAL

Defendants' contentions may be summarized as follows: (1) That the evidence does not support the finding that certain representations made to defendants by plaintiff's agent Lyon during the negotiations for the lease were neither material nor relied upon; (2) that cross-defendant Lyon breached his duty of good faith to defendants; and (3) that plaintiff, having initially filed an action for specific performance, must prove that the agreed rent was fair and adequate before it may recover any general damages.

The crucial question in considering defendants' first contention is whether there is any substantial evidence to support the trial court's findings. ■ "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689].)

■ "It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact." (*Tesseyman* v. *Fisher* (1952) 113 Cal.App.2d 404, 407 [248 P.2d 471]; *Pacific Paving Co.* v. *Mowbray* (1899) 127 Cal. 1, 3 [59 P. 205]; *Green* v. *Green* (1963) 215 Cal.App.2d 31, 35 [30 Cal.Rptr. 30]; *Davis* v. *Lucas* (1960) 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479]; *Gold* v. *Maxwell* (1959) 176 Cal.App.2d 213, 217 [1 Cal.Rptr. 226]; *Cooper* v. *Cooper* (1959) 168 Cal.App.2d 326, 331 [335 P.2d 983].) Defendants' contention herein "requires defendants to demonstrate that there is *no* substantial evidence to support the challenged findings." (Italics added.) (*Nichols* v. *Mitchell* (1948) 32 Cal.2d 598, 600 [197 P.2d 550]; *Green* v. *Green, supra; Davis* v. *Lucas, supra; Gold* v. *Maxwell, supra; Cooper* v. *Cooper, supra.*) A recitation of only defendants' evidence is not the "demonstration" contemplated under the above rule. (*Green* v. *Green, supra.*) ■ Accordingly, if, as defendants here contend, "some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived." (Italics added.) (*Kruckow* v. *Lesser* (1952) 111 Cal.App.2d 198, 200 [244 P.2d 19] and cases there collected; *Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670, 688-689 [296 P. 1088]; *Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 564 [78 Cal.Rptr. 25]; *Haynes* v. *Gwynn* (1967) 248 Cal.App.2d 149, 151 [56 Cal.Rptr. 82]; *Green* v. *Green, supra; Davis* v. *Lucas, supra; Gold* v. *Max-*

*well, supra; Cooper* v. *Cooper, supra.*) With these basic rules in mind we turn to a consideration of defendants' first contention.[4]

Defendants alleged three misrepresentations: (a) that the gross sales of plaintiff would be in excess of $1,500,000 at some time in the future after plaintiff had moved into the leased premises; (b) that certain alterations to be undertaken by plaintiff would cost approximately $250,000, whereas, in fact the cost was only about $81,000; and (c) that plaintiff, at its own cost, would demolish the mezzanine floor.

■ Since the lease provided for an additional rental of 5 percent of gross yearly sales over $900,000, the first alleged misrepresentation might have been of some importance. However, there is sufficient evidence to support the trial court's finding that any statements as to future sales were mere expressions of opinion, not material and not relied upon. Of the four witnesses who testified on behalf of plaintiff as to expected sales in the new premises, the highest estimate was approximately $1,052,500. Only defendant Norris testified that the representation as to $1,500,000 of future gross sales had been made, and cross-defendant Lyon, who, according to Norris, had made the representation, testified that he had said that *in his opinion* sales would be in excess of $900,000. Defendants were represented in the negotiations, which extended over a 7-month period, by defendant Norris, a lawyer with 33 years' experience. The trial court could have properly concluded that had the representation as to gross sales been material and relied upon, such an experienced lawyer would have required the representation to be included in the written lease. As was stated in *French* v. *Freeman* (1923) 191 Cal. 579, 585 [217 P. 515]: "What amounts to an expression of opinion as compared with a positive statement of fact depends upon all the circumstances of the case, and is a question for the trial court to determine."

■ There was substantial conflict in the evidence as to whether the second alleged misrepresentation (as to the cost of alterations) had in fact been made. The testimony of defendant Norris was internally inconsistent as to whether the broker Lyon had made this representation or whether Norris had obtained the figure as a rough estimate from a contractor. The trial court also heard testimony that the actual cost of alterations would have been $137,000, not $81,000. In addition, the trial court could have inferred that the representation, if made, was not material or relied upon since the lease contained no such provision although, as the trial judge said, "it would have been very simple to put it in the lease." The trial court properly weighed the conflicting evidence and in the words of the court found

<hr>

[4]Defendants' briefs on appeal, initially filed in the Court of Appeal, were prepared by counsel other than those now representing them.

it "probably more likely that . . . there wasn't any figure mentioned but that [the defendants] assumed it would cost that much from the description of the work."

■ The final misrepresentation claimed was that plaintiff would demolish the mezzanine floor at its own cost. While it was undisputed that early in the negotiations all parties thought that the mezzanine would have to be destroyed to provide a sufficiently high ceiling to make the ground floor an attractive store, there was also testimony that the broker Lyon told defendants prior to the execution of the lease that the mezzanine would not be destroyed, since it appeared that the ceiling could be raised sufficiently without disturbing the mezzanine. Furthermore, the lease originally contained a paragraph stating that most of the mezzanine was to be destroyed, but that paragraph was deleted from the final lease. The original draft also demised only the ground floor and the basement; whereas, the final lease demised the mezzanine as well. If the demolition of the mezzanine was material, it is difficult to imagine how an experienced lawyer, like Norris, could have permitted these changes without even mentioning them. Additionally, defendants' failure to object to alteration plans submitted to them for their approval in July 1965 even though the plans clearly showed that the mezzanine would not be destroyed, shows that defendants did not rely upon a representation that the mezzanine would be destroyed. There is sufficient evidence to support the trial court's finding that any representation as to demolition of the mezzanine was not material and was not relied upon.

■ As to the second contention, the trial court found that cross-defendant Lyon was the agent of plaintiff and made no finding that he was the agent of defendants. The latter do not here challenge the above finding. Their claim, therefore, that Lyon breached his duty of good faith which he owed defendants as their agent, must fall of its own weight.

■ Finally, defendants contend that plaintiff is not entitled to any general damages because plaintiff did not prove that the lease rental was fair and adequate, an element necessary to the cause of action for specific performance set forth in plaintiff's original complaint. "A complaint may allege inconsistent theories of a cause of action in the alternative [citation], including theories seeking specific performance of an agreement, or in the alternative, damages for the breach thereof [citations]; and, the court may award damages if plaintiffs are not entitled to specific performance. [Citations.]" (*Brandolino* v. *Lindsay* (1969) 269 Cal.App.2d 319, 324 [75 Cal.Rptr. 56]; see also *Pascoe* v. *Morrison* (1933) 219 Cal. 54, 57-59 [25 P.2d 9].)

Furthermore, trial was had upon plaintiff's amended and supplemental

complaint which did not contain a claim for specific performance. ██ ██ "It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. [Citations.]" (*Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 384 [267 P.2d 257].) "Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court. [Citations.]" (*O'Melia* v. *Adkins* (1946) 73 Cal.App.2d 143, 147 [166 P.2d 298].)

## PLAINTIFF'S APPEAL

As we have already pointed out, plaintiff challenges that portion of the judgment which limits its general damages to $25,000. ██ Plaintiff agrees, however, that the proper measure of damages for a landlord's failure to deliver possession of the premises leased is the difference between the agreed rent and the rental value of the premises during the term of the lease. (*Handley* v. *Guasco* (1958) 165 Cal.App.2d 703, 711 [332 P.2d 354]; *Lewis* v. *James* (1955) 134 Cal.App.2d 15, 22 [285 P.2d 86]; *McCulloch* v. *Liguori* (1948) 88 Cal.App.2d 366, 375 [199 P.2d 25]; *Peterson* v. *Larquier* (1927) 84 Cal.App. 174, 179 [257 P. 873]; 104 A.L.R. 132, 141 (1936); supplemented 88 A.L.R.2d 1024, 1032 (1963).) The trial court applied this measure of damages. Defendants, however, contend that the proper measure of damages is that set forth in Civil Code section 3306. That section deals with the measure of damages for breach of an agreement to convey an estate in real property and limits damages to expenses properly incurred in examining title and preparing the necessary papers, unless the breach was in bad faith. Our attention has not been directed to any decision applying section 3306 to leases of real property and we discern no compelling reason to employ its restrictive measure of damages to leases. To apply the section to leases would not only abrogate the decisions cited above but also establish a rule contrary to the weight of authority in the United States. Furthermore, the section, in referring to expenses of examining title appears to be intended to cover transactions involving the sale of land rather than leases, since title is not usually examined in a lease transaction. Therefore, we conclude that section 3306 is not applicable and that the trial court utilized the proper measure of damages.

Plaintiff contends that the judgment of the trial court was "contrary to *all* the evidence on the subject before it." According to plaintiff, the only evidence as to rental value of the premises was the expert testimony of Norris, one of defendants; Moss, one of defendants' experts; and Thomas, plaintiff's expert witness. Thomas testified that the rental value was $7,050 per month (as of January 1, 1966); Norris, that the rental value was $7,520 per month (as of May 1968); and Moss, that the rental value was $8,930 per month (as of May 1968). The difference between the lowest

of these figures and the minimum rental of $3,750 provided for in the lease would be $3,300 per month, or, properly discounted at 9 percent over the term of the lease, a total of $350,000. Relying upon *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal. Rptr. 245]; *People* ex rel. *D. of P. Wks.* v. *McCullough* (1950) 100 Cal.App.2d 101, 105-106 [223 P.2d 37]; and *People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal.App.2d 457, 464 [28 Cal.Rptr. 782], plaintiff argues that any award of general damages made by the trier of fact must be within the range of the expert testimony, that "an award less than the lowest value testified to by an expert witness is without evidentiary support" (*People* v. *Hayward Bldg. Materials Co., supra*) and that under the evidence it was thus entitled to damages in the sum of *at least* $350,000.

It is not clear to us whether plaintiff contends that the testimony of the three experts was the only evidence in the case and that the trial court erred in arbitrarily disregarding it, or that regardless of evidence in the case other than the testimony of the expert, the court was required to follow the expert testimony.

 Plaintiff is incorrect if it contends that the trial court had before it no evidence other than the expert testimony. The final lease, showing the rent actually agreed upon, was introduced in evidence, and the trial court heard testimony as to the lengthy lease negotiations which were conducted by Norris, an experienced lawyer, and Lyon, an experienced real estate broker. The court might well have concluded that such experienced businessmen arrived at an agreed rent that closely approximated the rental value of the premises.[5]

It is urged that the trial court could not properly consider such evidence because if the agreed rent were taken as the rental value in every case, then there would never be any damages awarded for lessor's breach by failure to deliver possession of the premises. This argument assumes that the trier of fact will blindly accept the agreed rent as rental value in every case. The fallacy of such an assumption is shown by the instant case in which the trial court found that the rental value was $25,000 higher than the agreed rent. Furthermore, in this case it would be unusual if the rental value did not closely approximate the agreed rent, given the lengthy negotia-

---

[5] The fact that the minimum rental was $45,000 per year, or 5 percent of $900,000, and that the additional rental was 5 percent of gross sales over $900,000 might properly have been taken by the trial court as showing that the parties considered $45,000 to be the rental value of the premises and therefore guaranteed that amount of rent while providing the additional rent in case the premises proved a more desirable location than anticipated.

tions between experienced parties. In other cases where these factors are not present, the trier of fact may properly give little weight to the agreed rent.

The trial court also had before it testimony that there had been prior leases of portions of the premises. The aggregate rentals from the leases closely approximated the agreed rent and, indeed, served as a basis for fixing the agreed rent. The general rule is that sale of similar personal property may be used to show the value of personal property. (Witkin, Cal. Evidence (2d ed. 1966) § 361, p. 321.) This court recognized in *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 755-758 [192 P.2d 935], that evidence of sales of the identical real property may be used to show the value of that property. In that case, the court held that evidence of the actual sales price of crops could be used to show their market value (hence, the value of the property on which they were grown) where it was alleged that the vendor of the property by misrepresenting the value of crops had in fact misrepresented the value of his property. (See also *L.A. County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333, 337 [29 Cal.Rptr. 13, 379 P.2d 493].) In *Babcock* v. *King* (1955) 137 Cal.App.2d 401, 402 [290 P.2d 6], the court held that agreed rent was evidence of the rental value of the premises leased. (See also *Harris* v. *Bissell* (1921) 54 Cal.App. 307, 312 [202 P. 453].)

However, plaintiff contends that this evidence should not have been considered since the other leases predated the breach by almost two years. This merely went to the weight which the trier of fact, in its discretion, gave to the evidence. It is also claimed that the trial court should have disregarded this evidence because the defendants introduced evidence that the rental value was greater than the other leases would indicate. Since evidence of the prior leases was properly introduced the trial court could consider it; the additional evidence of higher rental value was merely a factor to be considered in weighing all the evidence.

It is the position of plaintiff that the trial court could not properly consider either the evidence of agreed rent or that of prior leases because such evidence was introduced for a different purpose at a different stage of the trial. Indeed, as urged at oral argument, plaintiff claims that the trial was conducted in four stages in accordance with an agreement among all parties and the court, and that each of such stages constituted as it were an evidentiary compartment hermetically sealed off from any of the others. While the record before us shows that the parties and the court agreed that the trial would proceed in separate stages, we find no support in the record for plaintiff's contention that evidence introduced at one stage could not be used at another stage of the trial.

The first phase of the trial was on the issue of defendants' liability, under the amended complaint, for breach of the lease. The written lease was intro-

duced by plaintiff during this phase of the trial apparently to establish that a lease had been entered into by the parties and that defendants had breached its provisions. The issue of plaintiff's liability under the cross-complaint for fraud and misrepresentation was heard during the second phase of the trial. Evidence of prior leases covering the same premises was introduced during this phase to show the allegedly fraudulent conduct of plaintiff and the broker Lyon. The third phase of the trial was the rendition of the trial judge's opinion, on the basis of the evidence produced during the first two phases of the trial, as to the liabilities of the parties to each other. The final phase of the trial was on the issue of damages.

Plaintiff argues that to allow evidence introduced at one stage of a bifurcated trial[6] to be considered by the trier of fact at another stage of the trial on a different issue would destroy the usefulness of a bifurcated trial and constitute a trap for unsuspecting counsel who might neglect to request a limitation of the admissibility of the evidence to the sole issue being tried during the particular phase. Unless there is an explicit stipulation to the contrary, so the argument runs, evidence offered at one stage of a bifurcated trial should be considered to have been offered only on the issue presented at that stage. Essentially, this argument advances a new formulation of the doctrine of limited admissibility. No authority has been cited supporting such a position; nor have we found any.

Indeed, plaintiff's contention runs directly contrary to the settled rule that "[t]o confine admitted evidence to something less than its natural scope there must be agreement by the court. 'In the absence of an express understanding between counsel and the court that evidence is limited to a particular matter, the court will be authorized to consider it for any purpose for which it is competent and relevant to the issues.' (*Sears* v. *Starbird*, 78 Cal. 225, 230 . . . ; *Sill* v. *Reese*, 47 Cal. 294, 340.)" (*Greenblatt* v. *State Bd. of Equalization* (1957) 148 Cal.App.2d 619, 625 [307 P.2d 379].) The requirement that a party seeking to limit the scope of evidence must request the court to do so is now embodied in Evidence Code section 355.[7] "It is frequently the case that evidence which is admissible to establish one issue may tend to establish another issue than that for which it is offered, and it is the rule [in the absence of a proper request for limitation] that evidence so introduced is available to establish any of the issues in the case."

---

[6]For convenience, the term "bifurcated trial" will be used to describe the manner in which the present case was tried, though, as discussed above, the trial was held in four separate stages by agreement of the parties rather than pursuant to the provisions of Code of Civil Procedure section 598.

[7]Section 355 of the Evidence Code provides: "When evidence is admissible as to one party *or for one purpose* and is inadmissible as to another party *or for another purpose,* the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Italics added.)

(*Riverside Water Co.* v. *Gage* (1895) 108 Cal. 240, 245 [41 P. 299]; see also *Allen* v. *Enomoto* (1964) 228 Cal.App.2d 798, 801 [39 Cal.Rptr. 815]; Witkin, Cal. Evidence (2d ed. 1966) § 316, p. 280.) Since plaintiff at no time during the trial requested any limitation as to the purpose for which the evidence here under consideration was introduced, "[i]t was therefore usable for any purpose." (*Allen* v. *Enomoto, supra.*)

Despite such settled law, plaintiff insists that to fulfill the objective of a bifurcated trial, we must imply from the proceedings below a ruling that all evidence introduced at one stage of the trial be considered only as it relates to the particular issue dealt with during that stage. We cannot agree.

The major objective of bifurcated trials is to expedite and simplify the presentation of evidence.[8] Yet this objective would be thwarted by the limitation of the scope of evidence introduced at one stage of a bifurcated trial to the issue presented at that stage. To assure that the trier of fact could consider all the evidence on each issue, the parties would be required to reintroduce every piece of evidence at each stage of the trial. Thus, in the present case, plaintiff had to show the difference between the agreed rent and the rental value of the premises to establish damages. If plaintiff's theory were applied, plaintiff would have been required to reintroduce the lease in evidence during the damages stage of the trial to show the agreed rent. The prior admission of the lease during the first stage of the trial would not suffice. Such duplication of effort is the very opposite of the purpose of bifurcated trials.

Furthermore, the rule of limited admissibility applies properly only where the evidence is admissible for one purpose but is inadmissible for another purpose. (See Evid. Code, § 355.) Here, as shown above, the agreed rent and the prior leases were admissible to show the rental value of the premises. Therefore, even had an appropriate request for a limitation of the scope of the evidence been made, that request would properly have been denied and the evidence considered for all purposes.

---

[8]The objective of a trial such as was held in this case is exemplified by Code of Civil Procedure section 598. That section, which authorizes true bifurcated trials, was enacted at the joint recommendation of the State Bar and the Judicial Council. (Committee on Administration of Justice, Report (1963) 38 *State Bar J.* 485, 507; Judicial Council of Cal. 19th Biennial Rep. (1963) pp. 32-33.) As the publications of these two organizations indicate "[t]he primary purpose [of section 598] is to permit the issue of liability in personal injury cases to be tried prior to that of damages when, in the opinion of the court, the facts of a particular case justify it." (Randall and Farley, *The State Bar's 1959 Legislative Program* (1959) 34 State Bar J. 151, 164.) Such separate trial of the liability issue was considered desirable to avoid wasting court time in cases where the plaintiff loses on the liability issue, to promote settlements where the plaintiff wins on the liability issue, and to afford a more logical presentation of the evidence, thus simplifying the issues for the jury. (Judicial Council of Cal., 18th Biennial Rep. (1961) p. 57.)

■ Our following the general rule that evidence is properly considered on all issues unless expressly limited upon request is far less likely to constitute a trap for unsuspecting attorneys than would the adoption of the unique exception to that rule proposed by plaintiff. Thus, we find no merit in plaintiff's contention that the evidence could not be considered since it was introduced during a different phase of the bifurcated trial.

Finally, plaintiff contends that to allow the trial court to consider the evidence of agreed rent and prior leases would be contrary to the facts and the holding in *McCulloch* v. *Liguori, supra,* 88 Cal.App.2d 366. In that case as in this one, the defendant-lessor breached the lease and at trial testified that she "presumed" the rental value was approximately $100 per month greater than the agreed rent. The plaintiff's expert agreed in that estimate. The Court of Appeal reversed the judgment denying plaintiff damages and ordered the trial court to enter judgment awarding general damages in the amount of $100 per month for the 60-month term of the lease because "there is no conflict in the evidence as to the rental value of the property at the time of the breach of the agreement." (*Id.* at p. 376.) Had the *McCulloch* court determined the agreed rent to be evidence of rental value, it might have found a conflict in the evidence and upheld the judgment. However, the opinion gives no indication that the evidence of agreed rent was brought to the attention of the appellate court in this connection and therefore we cannot regard the case as being in conflict with our holding herein.

■ We therefore conclude that there was evidence other than expert testimony from which the trial court might properly have determined that the rental value was lower than that given in the expert testimony.[9]

■ However, we assume *arguendo* that plaintiff's position is that despite the other evidence, the trier of fact was required under *People* ex rel. *D. of P. Wks.* v. *McCullough, supra,* 100 Cal.App.2d 101, 105-106 and its progeny to find that rental value was within the range of expert testimony. *McCullough* and decisions following it hold that in condemnation cases any award must be within the range of the expert testimony if such testimony is the only substantial evidence in the case. But as we have explained, there

[9]Defendants also contend that the allegation in the specific performance count on plaintiff's original complaint that the lease rental was fair and adequate was evidence which the trial court could consider in determining rental value. However, the original complaint was superseded by the amended and supplemental complaint which contained no such allegation. The extent to which admissions in superseded pleadings may be used under the Evidence Code is still unsettled (see *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 417-420 [82 Cal.Rptr. 1]). But since the original complaint was never introduced in evidence, it may not now be relied upon (4 Wigmore, Evidence (3d ed.), § 1067, p. 68.)

was substantial evidence in this case other than the expert testimony. Moreover, plaintiff has not cited, nor have we found, any reported decisions in which the *McCullough* rule has been applied to other than a condemnation case.

As a general rule, "[p]rovided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]" (*Hicks* v. *Reis* (1943) 21 Cal.2d 654, 659-660 [134 P.2d 788].) This rule is applied equally to expert witnesses. (*Zimmer* v. *Kilborn* (1913) 165 Cal. 523, 525 [132 P. 1026]; see also, *Hemmerling* v. *Tomlev, Inc.* (1967) 67 Cal.2d 572, 577 [63 Cal. Rptr. 1, 432 P.2d 697]; *Camp* v. *Ortega* (1962) 209 Cal.App.2d 275, 283-285 [25 Cal.Rptr. 837]; *Aycrigg* v. *United States* (N.D.Cal. 1954) 136 F.Supp. 244, 246-251.) While special problems of condemnation proceedings may require different rules with regard to expert testimony (see, e.g., Evid. Code, § 810 et seq.), those rules should not be applied to cases such as this where such special problems do not exist. We therefore hold that the rule of *People* ex rel. *D. of P. Wks.* v. *McCullough, supra,* and its companion cases, is inapplicable to the case at bench, and that the trial court was warranted in rejecting the expert testimony and following the other evidence in the case.

The judgment is affirmed. The parties shall bear their own costs on appeal.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.