Filed 11/13/15  Flood v. Hardt CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BARBARA FLOOD,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THOMAS M. HARDT,<br><br>    Defendant and Respondent. | F069665<br><br>(Super. Ct. No. FL-611058)<br><br><br>**OPINION** |

APPEAL from judgments of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Matt Bogosian for Plaintiff and Appellant.

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Barry E. Rosenberg and Edward Gordon for Defendant and Respondent.

-ooOoo-

Barbara Flood (Barbara) appeals from judgments filed in the dissolution of her marriage to Thomas Hardt (Thomas).[1]  She contends that, throughout the dissolution proceedings, the trial court made numerous errors.  In bifurcated trials, it:

---

[1] We refer to the parties by their first names to ease the reader's task.  No disrespect is intended.

(1) mischaracterized funds deposited into a joint bank account during the marriage, which she argues are community property, and erred in failing to vacate its bifurcated judgment and grant her a new trial; (2) committed reversible error when it found Thomas did not breach his fiduciary duty and when it did not require Thomas to reimburse the community estate; (3) abused its discretion by ordering her to pay Thomas' attorney fees and by denying her request for fees; and (4) denied her due process of law and a fair trial by denying her motion to compel production of documents, refusing to issue a full statement of decision, denying her request to compel Thomas to issue an adequate declaration of disclosure, and not requiring Thomas to verify his response to her petition for dissolution. Finding no reversible error, we affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Barbara and Thomas married on March 23, 2006, and separated on August 26, 2009; they did not have children together. On September 11, 2009, Barbara filed a petition for dissolution of the marriage. Judgment of dissolution was granted on July 26, 2011, with the trial court reserving jurisdiction over all other issues.

Before their marriage, the parties entered into a Prenuptial Agreement (Agreement). The Agreement lists the real and personal property each party owned, as well as their debts and liabilities, in attached exhibits. Thomas' premarital assets totaling about $50 million are listed on Exhibit A, while Barbara's premarital assets totaling about $1.5 million are listed on Exhibit B.

The Agreement states it was the parties' "intention, desire and agreement" that "their respective rights in each other's property, whether it be real, personal, mixed, contingent, or otherwise shall be determined and fixed by this Agreement, . . . "
The Agreement contains a "Joint Accounts" provision, which states: "The parties shall maintain one or more joint bank, brokerage, or other accounts for the payment of community expenses and the accumulation of community assets. Any contributions to or deposits into any such accounts by Thomas or Barbara shall be deemed to be gifts to the

2.

community.  Neither Thomas nor Barbara shall be under any obligation to make any deposit into, or contribution to, any such joint account.  Any property acquired during Thomas and Barbara's marriage, the entire purchase price of which is paid from funds from these joint accounts, shall be community property.  If either party expends or contributes monies for the benefit of the parties without first contributing or depositing the same to or in such joint account or accounts, such expenditure or contribution shall not be a gift to the community and the characterization of any property acquired as a result thereof shall be determined in accordance with Sections 3 or 4 of this Agreement, as the case may be."[2]

A provision entitled "Tri Counties Bank Accounts" states that Thomas maintained two bank accounts at Tri Counties Bank with "present balances" of approximately $31,000 and $200,000, the parties intended "the funds in these accounts" to be community property once they were married, and by entering into the Agreement, Thomas intended to transmute these funds into community property.  This provision further states that in "transmuting these funds to community property, Thomas specifically waives any reimbursement rights he may have under California Family Code §2640 to the entirety of these funds in any dissolution of marriage or legal separation action filed by either party."

The Agreement also contains an attorney fees provision which states that if either party institutes any action or proceeding to enforce or interpret the Agreement, the prevailing party "shall be entitled to recover, from the other party, all costs and expenses actually incurred in such action or proceeding, including reasonable attorneys' fees, regardless of need."

---

[2] Unnecessary capitalization in all our quotations of the Prenuptial Agreement will be omitted.

In 2010, a bifurcated trial was held on the issue of the validity and enforceability of the Agreement before the Honorable John D. Oglesby. In December 2010, Judge Oglesby found the Agreement to be valid and enforceable. The written "Findings and Orders After Hearing" filed on January 10, 2011, states that Judge Oglesby found the Agreement was "not unconscionable[,]" that Barbara voluntarily and expressly waived any right to disclosure of the property or financial obligations of the other party beyond the provided disclosure, and that Barbara had, or reasonably could have had, adequate knowledge of Thomas' property or financial obligations. The order does not contain any ruling on the Agreement's attorney fee provision.

In February 2012, Barbara filed a request for a bifurcated trial on the characterization of $9.5 million that was deposited into a joint Bank of America account during the marriage; she contended these funds became community property pursuant to the Agreement's Joint Accounts provision. The parties agreed to try the issue on stipulated facts. In June 2012, the trial court issued a statement of decision in which it found that the property deposited into the joint bank account had not been transmuted to community property. Thereafter, Barbara filed a motion to set aside the trial court's order and stipulated judgment, which the trial court denied. After the trial court's bifurcated judgment was entered, she filed a motion for a new trial or to vacate the judgment, which the trial court also denied.

In March 2013, a court trial proceeded on "final trial issues." The parties each submitted exhibits that were admitted at trial. They also stipulated to certain undisputed facts. The trial court took judicial notice of prior court orders that showed a $150,000 distribution from Thomas to Barbara had been ordered, and that Thomas previously had paid Barbara $67,000 for her attorney fees. The parties also stipulated that there were at a minimum three joint assets at the date of separation, which included the joint Tri Counties accounts and the joint Bank of America account. Both Barbara and Thomas testified at the trial. Following submission of the evidence, the parties waived oral

4.

argument and agreed to a briefing schedule, with the parties simultaneously submitting opening and responsive briefs, after which the matter would stand submitted. After the parties submitted their briefs, the trial court vacated the submission to allow for additional briefing on an issue that came to its attention. After the parties submitted additional briefs, the matter stood submitted.

The trial court issued a tentative statement of decision on the issues submitted after the court trial on September 26, 2013, and a final statement of decision on October 30, 2013. Judgment was entered on March 28, 2014. The trial court: (1) confirmed certain assets as each party's separate property and found other property to be community property, which it divided between the parties; (2) ordered Barbara to pay Thomas $172,103 to equalize the community property division; (3) denied Barbara's requests for reimbursement for money she claimed Thomas withdrew from the Tri Counties accounts and which was deposited into those accounts; (4) rejected Barbara's claim that Thomas breached his fiduciary duty to her; (5) awarded Thomas $86,432.50 in attorney fees under the Agreement's attorney fees provision as the prevailing party on the litigation over the Agreement's validity; and (6) awarded Barbara $39,926.45 in needs-based attorney fees, but ultimately determined that Thomas did not owe her anything for her fees, as he had already paid her $66,700 for her attorney fees pursuant to the court's prior pendent lite orders, $46,667.51 of which was for the litigation over the Agreement's validity to which Barbara was not entitled since she did not prevail in that litigation.

Additional facts will be included in the discussion as relevant to the parties' contentions on appeal.

## DISCUSSION

### I. The Joint Bank Account

Barbara first challenges the trial court's finding in the bifurcated trial on the character of funds deposited into the joint Bank of America account during the marriage.

5.

She contends the trial court erred in finding that the Agreement did not transform those funds into community property. She further contends the trial court erred in failing to vacate its judgment and grant her a new trial.

A. Trial Proceedings

1) The Bifurcated Trial

In February 2012, Barbara filed an application for a separate trial on the issue of the character of funds deposited into a "Bank of America joint Prima Account" during the marriage. She declared that between January and November 2008, monthly deposits totaling $9,506,582.40 were made into the joint account, and argued that pursuant to the Agreement's terms, the deposits were community property and she was entitled to receive one-half of the funds, or $4,753,291.20.

In a responsive declaration, Thomas stated that Barbara had added his name to the Bank of America account, they both had signature rights on the account, and the account was used almost exclusively by Barbara. Thomas objected to the case being summarily adjudicated absent an agreement on the essential facts. If Barbara was willing to agree to the relevant portions of the Agreement that needed interpretation and the essential underlying facts, however, Thomas was willing to allow the court to decide whether, under the Agreement, (1) all deposits into a joint signature account resulted in a gift to the community, and (2) he waived his right under Family Code section 2640 to be reimbursed for deposits from his separate property to the joint account.

On April 10, 2012, after an in-chambers discussion, the parties agreed that the court, the Honorable Stephen D. Schuett presiding, would decide the issue of the characterization of the funds based on stipulated facts. Judge Schuett set a briefing schedule, in which the parties were required to file their opening briefs by April 27, 2012, and responsive briefs by May 15, 2012; the matter was deemed submitted upon filing of the responsive briefs.

6.

The facts are contained in the "First Stipulated Order Limiting Issues at Trial" filed on April 10, 2012, which the parties and Judge Schuett signed (the Stipulated Order). Immediately above the parties' signatures, the order stated that "[b]y signing below, each party has acknowledged that each has read this Stipulated Order, understands and agrees to its terms, and has received a copy of it." The parties' attorneys approved the Stipulated Order as to form and content, which included a statement that "[t]his court finds the following facts to be true and binding on the parties for all purposes in this proceeding."

The facts are as follows. In 1990, over 16 years before the parties' marriage, Thomas established and became trustee of the Hardt Family Trust (the Hardt Trust). Significant assets were held in the Hardt Trust for the benefit of Thomas and his family members. At the time of the parties' marriage, most of the Hardt Trust's liquid assets were held in a Banc of America brokerage account in Thomas' name as trustee of the Hardt Trust (the Banc of America account). In 2008, Thomas, as trustee of the Hardt Trust, transferred $8,229,235.28 of the Hardt Trust's assets from the Banc of America account to a Charles Schwab brokerage account, where the funds continued to be held in Thomas' name as trustee of the Hardt Trust (the Schwab account). The $8.2 million came from money or assets the Hardt Trust held before Thomas' marriage to Barbara.

To help expedite and facilitate the $8.2 million transfer of the Hardt Trust funds from the Banc of America account to the Schwab account, Barbara, as trustee of the Barbara Flood Separate Property Trust (the Flood Trust), agreed that Thomas, as trustee of the Hardt Trust, would first deposit the $8.2 million into a trust account she maintained at Banc of America in her name, as trustee of the Flood Trust. From there, the $8.2 million in trust funds was deposited into a linked, joint checking account at Bank of America on which both Barbara and Thomas had signature rights (the Joint Account). Immediately thereafter, Thomas' trust money was transferred from the Joint Account to the Schwab account, where it was held by Thomas as trustee of the Hardt Trust. Both

7.

parties acknowledged that, in addition to the $8.2 million deposited into the Joint Account, over $1 million of other money was deposited into the Joint Account during the parties' marriage, including, but not limited to, Barbara's separate property funds.

The transfer of the Hardt Trust's funds was handled in this manner at the suggestion of Barbara and Thomas' broker at Banc of America, Tom Woodward, who explained to them how the transfers would work and why they were necessary. Woodward sought and obtained Barbara's permission to use the Flood Trust account as the initial depository of the funds. Barbara agreed to take all of the trust funds Thomas deposited into her Flood Trust account and redeposit them into the Joint Account, so they could be transferred directly to the Schwab account. Both Barbara and Thomas were fully aware of Woodward's plan and consented to it. The funds transferred from the Flood Trust's brokerage account to the Joint Account were in the Joint Account for not more than a few days before they were transferred to the Schwab account.

The $8.2 million that Thomas was holding as trustee of the Hardt Trust was the subject of Barbara's motion. She contended she was entitled to one-half of this money because: (1) the funds were deposited into the Joint Account during the marriage; (2) the Agreement's joint accounts provision transmutes funds deposited into joint accounts into community property; (3) the joint accounts provision does not contain an express right of

reimbursement under Family Code section 2640;[3] (4) the Agreement is limited to its terms; and (5) the Joint Account is governed by Probate Code section 5305.[4]

In accordance with the trial court's briefing schedule, Barbara filed an opening brief in which she argued that the Joint Account should be deemed community property without a right of reimbursement under Family Code section 2640 for two reasons: (1) the Agreement limited property rights to the Agreement's terms and the Agreement does not contain any right of reimbursement for joint bank accounts; and (2) since the Agreement defines joint bank accounts as community property, Probate Code section 5305 precludes reimbursement under Family Code section 2640. Barbara asked the court to take judicial notice of the file in the case, including all pleadings, findings, orders, declarations and exhibits incorporated therein.

Thomas filed a brief responding to Barbara's arguments.[5] Thomas argued that the Agreement was never intended to apply to the $8.2 million transfer, as the Agreement did

---

[3] Family Code section 2640, subdivision (b) provides, in pertinent part: "[U]nless a party has made a written waiver of the right to reimbursement of or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contribution to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. . . ." Family Code section 2640 creates a substantive right of reimbursement that can be relinquished only by an express written waiver by the contributing spouse. (*In re Marriage of Witt* (1987) 197 Cal.App.3d 103, 108 [discussing former Civil Code section 4800.2].) "In the absence of such a written waiver the donative intent of the contributing spouse does not bar reimbursement. . . ." (*Ibid.*)

[4] Under Probate Code section 5305, subdivision (a), funds on deposit in a joint account owned by a husband and wife are presumed to be community property. The presumption, however, may be rebutted under Probate Code section 5305, subdivision (b), by proof that either (1) the funds can be traced from separate property, unless there is a written agreement that the funds are community property, or (2) there is a written agreement, separate from the deposit agreement, that expressly provides the funds are not community property.

[5] In his response, Thomas refers to a document entitled "Respondent's Final Argument in Response to Petitioner's Motion for a Finding that Respondent made a $8.2 Million Gift[,]" which he previously filed in compliance with the trial court's order for

not clearly and explicitly transmute all funds deposited into a joint account into community property. Thomas further argued that even if it did, the Agreement did not waive his rights under Family Code section 2640 or Probate Code section 5305. Thomas also filed an objection to the request for judicial notice, arguing that the request was untimely and substantively deficient.

The trial court issued a written tentative statement of decision on May 22, 2012, and its final statement of decision on June 15, 2012. The trial court took judicial notice of the documents in the court file, subject to the limitation that it could only take judicial notice of the existence of those documents, not the facts contained in them. The trial court explained that the resolution of the dispute was founded in basic contract principles. The trial court noted that the parties to the Agreement did not include Thomas in his representative capacity as the trustee for the Hardt Trust, and there was nothing in the Agreement to suggest that Thomas intended to include trust property within its terms. Accordingly, the trial court determined that the Agreement did not operate to transform trust property into the parties' community property, and since the trust's property was not within the Agreement's terms, the issue of whether Probate Code section 5305 applied was moot.

2) The Motion to Set Aside

In August 2012, Barbara moved to set aside the stipulated order and the trial court's rulings on the grounds of duress, mistake, surprise, excusable neglect, a lack of required disclosures and her attorney's affidavit of fault, under Code of Civil Procedure

the parties to file their final arguments on the motion. Thomas asserted in his response that his position was fully set forth in that document and he would not repeat those arguments in his responsive brief. Although the superior court docket shows that Thomas filed a trial brief on April 26, 2012, Barbara did not designate this document for inclusion in the clerk's transcript and it is not part of the appellate record. The trial court's docket also shows that Barbara filed a reply brief, presumably to Thomas's opening brief, on May 14, 2012; Barbara also did not designate that document for inclusion in the clerk's transcript.

section 473, subdivision (b), and Family Code sections 2107, 2120 and 2122. Barbara declared that she was forced to sign the stipulated order because "it was late in the day, and the only choice presented to my attorney was to accept the stipulated facts or set a trial date several months out." She further declared that she had to review the stipulation in the court hallway with no documents or the ability to determine the validity of the facts, and "[i]t was either sign the document or wait even longer for any resolution to my case." She asserted that after receiving the trial court's rulings, she inquired of financial institutions to determine whether the stipulated facts were valid, and explained the information she discovered as a result of her investigation.

Barbara's attorney asserted in his declaration that during the chambers conference, he understood that the trial court would determine the character of the funds deposited into the Joint Account based on the Agreement's terms, and the trial court never indicated to him that it would consider any documents other than the Agreement and the Joint Account statements to determine the funds' character. Had he known the trial court would characterize the funds based on a document neither he nor Barbara had seen, he would never have signed the Stipulated Order and would have insisted that Thomas produce the underlying documentation.

Barbara filed a supplemental declaration, in which she asserted that Thomas' disclosure of his assets in Exhibit A to the Agreement included disclosures of property held by the Hardt Trust. Accordingly, she requested a finding that the joint accounts provision applied to all of Thomas's assets, including accounts held by him in the Hardt Trust. She also asserted she found evidence that showed that $3.2 million of the $8.2 million at issue was not transferred into the Schwab account, but was transferred into a Tri Counties account, which pursuant to the Agreement was a community property account.

Thomas opposed the motion, arguing there was no basis to set aside either the Stipulated Order or the trial court's rulings. In her reply, Barbara asserted for the first

11.

time that the parties were entitled to have one judicial officer preside over multiple bifurcated trials, and argued she was denied due process because Judge Oglesby heard evidence and decided that the Agreement was valid, while Judge Schuett determined the Agreement did not apply to the transfer of funds to the Joint Account without hearing any testimony on the issue.

After oral argument on the motion, the trial court took the matter under submission. On October 18, 2012, the trial court issued its written ruling denying the motion. The trial court found there was "nothing in the record to substantiate any ground for relief." Noting that Barbara's attorney admitted he decided to execute the stipulation without performing any due diligence, it appeared to the trial court that Barbara and her attorney "simply decided to enter into the stipulation without an understanding of the underlying facts[,]" and did nothing to protect themselves, such as reviewing the file or seeking additional time to assure themselves of the facts. The trial court also noted that Barbara's assertion that the stipulation was reached "late in the day" mischaracterized the record, as the stipulation was completed and filed with the court before noon.

The trial court determined that rather than demonstrating any excusable neglect, Barbara and her attorney "made a deliberate tactical decision, received a decision based on the stipulated facts[,] and now seek to have the court give them a second bite of the apple." The trial court declined to do so. The trial court further explained that while it was not required to consider the issue Barbara raised for the first time in her reply brief about the matter being heard before a different judge, it appeared that she had waived the issue since the parties agreed to submit the trial on the characterization of the $8.2 million transfer to it.

On November 28, 2012, the trial court entered judgment on the characterization of the $8.2 million that conformed to its statement of decision.

3) The New Trial Motion

In December 2012, Barbara filed a notice of intent to move for a new trial based on irregularity in the proceedings, accident, surprise, insufficiency of the evidence, and an error of law, and to vacate the judgment due to an incorrect and erroneous legal basis not supported by the facts. She argued the proceedings were "irregular[,]" as "there was no 'trial' on the merits" since the parties stipulated to the facts, the trial court declined her attorney's request for oral argument, and the trial court declined to apply the Agreement based on a finding that nothing in the Agreement suggested Thomas intended to include trust property. Barbara asserted that to "regularize" the proceedings, oral testimony and documentary evidence must be allowed to ensure neither party's property rights were infringed without due process and an opportunity to be heard.

Barbara further argued (1) the trial court should have allowed oral argument on the issue of whether the Agreement should apply; (2) there was insufficient evidence to support the trial court's implied finding that trust property was excluded from the Agreement; (3) the trial court erred in failing to apply the Family and Probate Code provisions to characterize the Joint Account; and (4) the judgment should be vacated due to its failure to apply the Agreement or the Probate Code. In support of the motion, Barbara's attorney executed a declaration in which he stated that during the chambers conference on April 10, 2012, the trial court "refused counsel's request for oral argument"; he also asserted that at no time did he waive Barbara's "right to a trial or waive my client's right to be heard."

In opposing the motion, Thomas argued there was no due process violation because Barbara had her day in court, and no miscarriage of justice because Barbara and her attorney voluntarily entered into the stipulation for tactical reasons.

At oral argument on the motion on February 15, 2013, the trial court began by stating it took exception to Barbara's attorney's statements in his pleadings that it denied him an opportunity to present oral argument or testimony, as they did not accurately

13.

reflect the record of the proceedings. The trial court explained that with respect to oral testimony, the parties and counsel submitted on the written stipulation, and it was not aware of any request that was made on the record to present oral testimony. With respect to oral argument, the trial court recalled that while there was an in-chambers discussion about whether the court needed anything in addition to the briefs and the court stated it did not believe so, the court never denied Barbara's attorney the opportunity to present oral argument. After hearing oral argument, the court took the matter under submission. On February 20, 2013, the court issued a minute order denying the motion.

B. Analysis

We begin with Barbara's contentions concerning the trial court's June 2012 ruling that the Agreement did not operate to transform the $8.2 million in trust property into community property because there was nothing in the Agreement to suggest Thomas intended to include trust property within its terms. Barbara contends the trial court erred in so finding because the Agreement clearly applied to all the property of each party, the list of Thomas's assets in Exhibit A constituted all of his property, and Thomas testified before Judge Oglesby that all of his property was held in his trust. She argues that the only "logical and reasonable inference" that can be drawn from these facts is that the parties intended the Agreement to apply to the Hardt Trust property.

Barbara further argues (1) it was absurd for the trial court to interpret the joint accounts provision as not applying to the Hardt Trust funds because the Agreement does not "qualify the application of the provision to deposits originating from a particular source"; (2) because Thomas failed to disclose on Exhibit A that his asserts were held in a trust, the Agreement should be interpreted to prevent him from circumventing the community property provisions; (3) since Thomas' lawyer drafted the Agreement, any uncertainty must be interpreted against Thomas; and (4) the joint accounts provision must be interpreted in her favor. Barbara also argues the trial court erred in failing to apply

14.

Probate Code section 5305 to find that the funds deposited in the Joint Account were community property without right of reimbursement under Family Code section 2640.

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.'"]; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Thus, a party challenging a judgment or an appealable order "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).)

"'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.'" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*); see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*) [record lacked copies of motion and opposition; issue resolved against appellant due to inadequate record].) Thus, where the appellant fails to provide an adequate record as to any issue the appellant has raised on appeal, the issue must be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 (*Maria P.*).)

With respect to the bifurcated proceeding on the characterization of the money that was funneled through the Joint Account, Thomas' opening brief and Barbara's corresponding reply brief are not in the clerk's transcript, as Barbara did not designate them for inclusion. Without these documents, "we cannot review the basis of the [trial] court's decision" and the issue must be resolved against Barbara. (*Hernandez, supra,* 78 Cal.App.4th at p. 502.) The reasoning of *Hernandez* applies here, as we do not know what issues Thomas raised in his brief which could support the trial court's ruling. The inadequate record precludes relief to Barbara on this issue on appeal.

Moreover, Thomas raised an argument below that he renews on appeal, but which Barbara fails to address in either her opening or reply briefs, namely that the Agreement does not transmute all funds in all joint bank accounts into community property, but only deposits made into joint accounts maintained "for the payment of community expenses and the accumulation of community assets." By failing to address this issue, Barbara has not shown prejudice.

In order to secure the reversal of an adverse judgment, it is not enough for the appellant to establish that the trial court committed some error; the appellant must also affirmatively demonstrate the error complained of caused injury and therefore was prejudicial. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People v. Watson* (1956) 46 Cal.2d 818, 835-836 (*Watson*); *Tupman v. Haberkern* (1929) 208 Cal. 256, 263 (*Tupman*); *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 (*Waller*); *Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 318.) In other words, prejudice is not presumed from error, and the reviewing court is obliged to declare "whether the error found to exist has resulted in a miscarriage of justice, and not to reverse the judgment unless such error be prejudicial." (*Tupman, supra,* at p. 263.) Prejudice is established when the reviewing court "is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* at p. 836; *Waller, supra,* at p. 833.) This principle has been a part of the law of California since 1914. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 408, pp. 459-460.)

Here, Barbara has failed to show that, even if we conclude the trial court erred by finding the parties did not intend to include trust property in the Agreement, the result would be a reversal of the judgment. This is because Thomas raised at least one additional ground which would support a finding that the Agreement did not transmute

16.

the Hardt Trust funds into community property.[6]  Though the trial court did not expressly rule on this alternative argument, it constitutes an independent potential basis for finding no transmutation occurred and, if legitimate, would validate the trial court's ultimate ruling.  Barbara, however, does not raise any appellate issue in her briefs with respect to this alternative basis, such as that it is legally unsound or otherwise would not have supported, standing alone, a ruling in Thomas' favor.  Thus, even if the trial court was wrong in making the finding Barbara challenges, she has not affirmatively shown that this alternative ground does not require the same result.  (See *Davey v. Southern Pacific Co* . (1897) 116 Cal. 325, 329 (*Davey*); *Tupman, supra,* 208 Cal. at p. 263; see also *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-854.)[7]

Because no error has been shown with respect to the trial court's finding that the $8.2 million was not within the Agreement's terms, the trial court did not err in failing to apply Probate Code section 5305 to the $8.2 million, as the money could be traced to a separate property source.  (Prob. Code, § 5305, subd. (b)(1).)

With respect to the motion for a new trial, Barbara argues that because the trial court found that Thomas did not intend to include trust property within the Agreement's

---

[6] Thomas raises alternative arguments on this issue in the respondent's brief. Specifically, he argues that the transfer was not a gift under the gift law because Barbara was given only temporary possession of the Hardt Trust funds for the limited purpose of transferring those funds from one brokerage account to another, and there was no transmutation of trust assets under Family Code section 852, subdivision (a).  Since Thomas' opening brief on the bifurcated trial is not in the record, it is not clear whether he raised these arguments below.  Significantly, Barbara does not address either of these alternative bases for affirming the trial court's order in her reply brief.

[7] We note that it is immaterial that the failure to address this ground may have been due to the fact that the trial court did not rule on this issue, since the scope of appellate review is not limited to an evaluation of the trial court's reasoning or the theory underlying its decision.  Instead, an appellate court assesses judicial action, not judicial reasoning.  (*El Centro Grain Co. v. Bank of Italy, etc.* (1932) 123 Cal.App. 564, 567; *Diaz v. Shultz* (1947) 81 Cal.App.2d 328, 332.)  If the ultimate result the trial court arrived at is correct on any theory of law relevant to the case, it must be affirmed. (*Davey, supra,* 116 Cal. at p. 329.)

terms, it was required to grant a new trial to give her the opportunity to be heard via oral trial testimony as to any representations Thomas made about his property being in a trust. She also asserts that because the trial court ruled on "a series of material contested trial issues" based on stipulated facts that failed to resolve those issues, the trial court "failed to do its job of weighing all competent evidence[,]" and by refusing to allow her to present oral evidence on the controverted issues, the court deprived her of property without due process of law. Finally, she argues the trial court erred in refusing her request to have the oral testimony presented to Judge Oglesby.

Barbara does not cite the legal basis for her request for a new trial. Presumably, she is arguing, as she did below, that the trial court should have granted a new trial based on "[i]rregularity in the proceedings of the court . . . or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." (Code of Civ. Proc., § 657(1).) "An 'irregularity in the proceedings' is a catchall phrase referring to any act that (1) violates the right of a party to a fair trial and (2) which a party 'cannot fully present by exceptions taken during the progress of the trial, and which must therefore appear by affidavits.'" (*Montoya v. Barragan* (2013) 220 Cal.App.4th 1215, 1229-1230.)

A trial court's broad discretion in ruling on a motion for new trial is accorded great deference on appeal. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160 (*Sherman*).) However, particularly when reviewing an order denying a new trial, the appellate court is required to review the entire record to determine independently whether the error on which the new trial motion is based is prejudicial. (*Id.* at pp. 1160-1161.)

As Barbara apparently concedes, she made no request to present oral testimony *before* the matter was submitted to the trial court on the stipulated facts. Instead, she argues that oral testimony was required because of the trial court's ruling. Barbara admits that such testimony was needed only "[o]nce the Trial Court expressed a lack of

18.

clarity as to whether the [] Agreement was intended to apply to trust property." Barbara, however, does not explain how this constitutes an "irregularity in the proceedings." Barbara was not prevented from having a fair trial; she agreed to the stipulated facts and did not ask to present testimony. Instead, as the trial court found in denying Barbara's motion to set aside its rulings, she made a tactical decision to submit on the stipulated facts and, having done so, was not entitled to a second bite of the apple.

Even if the trial court's ruling constituted error, however, Barbara fails to establish that such error was prejudicial. This is because, as discussed above, she failed to establish that the trial court's decision that the trust property was not transformed into community property cannot be affirmed on a basis other than the trial court's finding that the trust property was not included in the Agreement. Barbara asserts testimony was required only as to that finding, not as to any other basis for finding that the trust property was not transmuted into community property. Because no prejudicial error is shown, Barbara fails to establish that the trial court abused its discretion in denying her motion for a new trial. (Cal. Const., art. VI, § 13; *Sherman*, *supra*, 67 Cal.App.4th at p. 1161 [trial court is bound by constitutional provision requiring prejudicial error as basis to grant new trial].)

With respect to Barbara's claim that a new trial was required because Judge Oglesby did not hear the matter, the trial court correctly found that Barbara waived that claim when she agreed to the Stipulated Order. In the case upon which Barbara relies, *European Beverage, Inc. v. Superior Court* (1996) 43 Cal.App.4th 1211 (*European Beverage*), in which the appellate court held that a party in a court trial is entitled to have the same judge try all portions of a bifurcated trial that depend on weighing evidence and issues of credibility absent a waiver or stipulation to the contrary, the defendants objected when the judge who heard the first phase of a bifurcated trial became unavailable and the second phase was assigned to a different judge. (*Id.* at pp. 1213-1214.) In contrast here, Barbara did not object when her motion to bifurcate was assigned to Judge Schuett; in

19.

fact, she expressly agreed for him to render a decision on the stipulated facts. (*Id.* at p. 1215.)

Barbara points out that the appellate court in *European Beverage*, 43 Cal.App.4th 1211, determined that submitting a discovery motion to a law and motion judge did not waive the right to have the same judge hear and decide both phases of an evidentiary trial (*id.* at p. 1215), and argues that a trial on stipulated facts is similar to a discovery motion. But by signing the Stipulated Order, she agreed to have Judge Schuett decide the matter on the stipulated facts. She cannot now complain that Judge Oglesby was required to decide the matter.

In a subheading under her argument that the trial court erred in its rulings with respect to the bifurcated trial on the $8.2 million transfer, Barbara includes a two paragraph argument in which she contends that in finding that $8.2 million of the over $9.5 million in funds deposited into the Joint Account was "immune" from the Agreement, the trial court failed to characterize the remaining $1.3 million. It is not clear if Barbara is contending the trial court erred in failing to characterize these funds in the bifurcated proceeding or in the subsequent trial on the remaining issues. To the extent she is arguing that the trial court was required to characterize this money in the bifurcated proceeding, the claim fails as the trial court was not asked to characterize the $1.3 million; instead, pursuant to the Stipulated Order, it was asked to characterize the $8.2 million that came from the Hardt Trust.

In sum, Barbara has not shown reversible error with respect to the trial court's ruling in the bifurcated trial on the $8.2 million transfer.

II. The Property Division

Barbara challenges certain rulings the trial court made in its final judgment on reserved issues following the March 2013 court trial. Specifically, she contends the trial court (1) abused its discretion in finding that she failed to establish that Thomas breached his fiduciary duty by converting her separate property assets for his personal use; and

20.

(2) erred in failing to award the community $231,000 pursuant to the Agreement's provision concerning the Tri Counties accounts.  In addition, although her argument is not clear, it appears Barbara contends the trial court erred in failing to characterize $1.3 million that was deposited into the Joint Account.

A.  Standard of Review

"Generally, we review a ruling dividing property under the abuse of discretion standard.  [Citation.]  Factual findings are upheld if supported by substantial evidence.  [Citation.]  However, to the extent the trial court's decision reflects an interpretation of a statute, it presents a question of law that we review de novo." (*In re Marriage of Dellaria* (2009) 172 Cal.App.4th 196, 201.)  We interpret a premarital agreement according to the rules generally applicable to contracts.  (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 13.)  Where there is no extrinsic evidence or the evidence is not in conflict, our review is de novo.  (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)  Where, however, there is conflicting evidence, we must uphold any reasonable construction by the lower court.  (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 375, pp. 424-425.)

Under the substantial evidence standard of review, we review the entire record in the light most favorable to the prevailing party to determine whether there is substantial evidence to support the trial court's findings.  We resolve all conflicts in the evidence and draw all reasonable inferences in favor of the trial court's findings, keeping in mind that "substantial evidence is evidence of ponderable legal significance."  (*In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 931.)  However, "'we have no power to judge ... the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.'"  (*In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200.)

"'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the

21.

determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) The judgment is presumed to be correct. (*Arceneaux, supra,* 51 Cal.3d at p. 1133.) And we presume that the record contains evidence to sustain every finding of fact. (*Foreman, supra,* 3 Cal.3d at p. 881.) It is the appellant's burden to demonstrate that it does not. (*Ibid.*)

In furtherance of its burden, the appellant has the duty to fairly summarize the facts in the light most favorable to the judgment. (*Foreman, supra,* 3 Cal.3d at p. 881.) This means that the trial evidence must be summarized in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference, and resolving any conflicts in support of the verdict. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) A recitation of only the appellant's evidence is not a fair summary for purposes of determining whether inferences drawn by the trier of fact are reasonable and supported by substantial evidence. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) An appellant's failure to provide a fair and complete summary of evidence supporting the judgment results in forfeiture of contentions based on sufficiency of the evidence. (*Ibid.*)

With these principles in mind, we turn to Barbara's contentions.

B.  The Breach of Fiduciary Duty Claim

In a post-trial brief, Barbara argued that Thomas engaged in self-dealing and breached his fiduciary duty when he (1) wrote a $3.2 million check to his separate Tri Counties Bank account from the Joint Account, and (2) wrote a $639,718.94 check to his separate Charles Schwab account from the parties' joint Charles Schwab account. Barbara asked the trial court to reimburse the community for these amounts, and to award one-half of the funds to her.

The trial court found that there was no breach of fiduciary duty, as no evidence was presented that pointed to Thomas' misappropriation or misuse of community funds. In so finding, the trial court noted that while Barbara claimed she had no knowledge of

the financial transactions involving the parties' joint accounts, the evidence showed that (1) Barbara wrote the vast majority of the checks on the joint Tri Counties checking account and all checks on the Joint Account, except for checks related to the $8.2 million transfer dealt with in the bifurcated trial; (2) the bank statements were received either at the family residence or Thomas' office; (3) according to Thomas, Barbara and her daughter maintained the bank statements in binders kept in the family residence, and he had regular discussions with Barbara regarding their finances; and (4) when questioned at trial about her breach of fiduciary duty claim, Barbara could not point to any specific action or inaction of Thomas, but testified just that she did not know what happened to all of the $1.5 million she claimed she brought into the community.

The trial court explained that Barbara in essence was claiming that because she was not sure of what happened to this money, she believed Thomas had breached his fiduciary duty, but based on her testimony, she spent much of that money supporting her children from her previous marriage. The trial court found that, excluding the $8.2 million transfer previously dealt with, most of the funds placed in the Joint Account came from Barbara's separate property, she signed checks on that account, and Thomas provided a detailed tracing with respect to the transfers in question. Accordingly, the trial court determined there was no evidence of misappropriation or misuse of community funds.

The trial court further ruled with respect to the $3.2 million check that there was no evidence to support Barbara's claim that this was a community asset created by the joint accounts provision. While Barbara relied on the check itself and a bank statement from Tri Counties Bank to attempt to show the funds were transferred to Thomas' separate account, the trial court noted that the bank statement failed to show that any deposit of those funds occurred, and instead showed there was a $3.2 million draw on the line of credit associated with the account. The trial court further noted that Thomas testified the funds were part of the $8.2 million transfer that the court already ruled on,

23.

which testimony it found credible. Accordingly, the trial court found that Thomas was not required to reimburse the community for the $3.2 million transfer.

Finally, with respect to the $639,718.24 Barbara claimed Thomas owed the community under the Agreement's jointly held property provision,[8] the trial court found (1) both parties made deposits into the joint Schwab account, and Barbara's deposits came from the "Bank of America Account"; (2) in November 2008, Barbara requested return of the funds she deposited into the joint Schwab account so she could pay her children's expenses in a lump sum rather than monthly payments; (3) when the parties discussed the return of those funds, Barbara provided a handwritten accounting of the deposits to and withdrawals from the account, and her understanding of the amount that would represent her separate property interest in that account, $307,354; (4) the parties agreed to have Thomas pay her that amount from his separate funds in exchange for her relinquishing her claim to the remaining funds in the joint Schwab account; (5) Thomas paid those funds to Barbara and executed a written receipt that Barbara signed acknowledging her relinquishment of the funds remaining in the joint Schwab account; (6) Barbara deposited the funds into the joint account; and (7) Thomas then transferred the remaining balance of the joint Schwab account into his separate Schwab Family Trust Account. The trial court found her claim to additional funds from the joint Schwab account wholly without merit in light of the evidence that Barbara received payment from Thomas' separate property account for her interest in the joint Schwab account and signed a receipt acknowledging her waiver of any additional claim to the remaining funds.

---

[8] The "Jointly Held Property" provision states that in addition to the joint account provision, and "except as otherwise provided for in this Agreement, any other property which Thomas and Barbara hold title to jointly with one another shall be community property, whether title is held as community property, joint tenants, tenants in common, or some other form of joint ownership."

24.

On appeal, Barbara contends these rulings were erroneous because (1) Thomas testified he had five and a half years of banking experience with the Bank of America, where he was a real estate loan officer and vice president, (2) the record includes documentary evidence and Thomas' testimony that he wrote himself a $3.2 million check on the Joint Account to pay down his own line of credit, and (3) the record shows Thomas wrote himself a check on the joint Charles Schwab Account. Barbara asserts this evidence shows that Thomas took money from joint community property accounts, used the funds for his own purpose, and never replaced them. She argues that under *In re Marriage of Margulis* (2011) 198 Cal.App.4th 1252, the trial court committed reversible error in neglecting to count and return to the community funds Thomas took for his own use.

In her argument, however, Barbara entirely ignores the trial court's rulings on each of the transfers she contains constituted misappropriations, in which the trial court found that Thomas provided evidence to explain each transfer and there was no evidence he misappropriated these funds. She utterly fails to set forth in her brief all the material evidence on these points. Although the testimony offered at trial was not extensive, numerous exhibits offered by Barbara and Thomas were admitted at trial. Barbara, however, designated for inclusion in the clerk's transcript only 35 exhibits she presented; she did not designate Thomas' approximately 38 exhibits for inclusion and they were not transmitted to this court.

By her failure to set forth the evidence that supports the trial court's decision, as well as her failure to provide us with a complete record of the evidence admitted at trial, Barbara has forfeited her substantial evidence argument. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) We note, however, that Thomas' trial testimony that (1) the $3.2 million was part of the $8.2 million subject that previously was found not to be community property, and (2) Barbara gave him the joint Schwab account in exchange for a $307,354 check, which was the value of the account at the time, and he put additional money into the

25.

account for a total of $639,000, which he later transferred to the Hardt Trust account, coupled with Barbara's testimony that she signed stipulated facts to that effect, constitutes substantial evidence to support the trial court's rulings.

C. The Tri Counties Bank Accounts

At trial, Barbara argued that the Agreement's provision concerning the Tri Counties Bank accounts, which provided that the parties intended "the funds" in two accounts that Thomas maintained at Tri Counties Bank, which had balances of $31,000 and $200,000 at the time of the Agreement, to be community property, and which stated that in "transmuting these funds into community property, Thomas specifically waives any reimbursement rights he may have under California Family section 2640 to the entirety of these funds in any dissolution of marriage . . . ," meant that all funds deposited into the two accounts during the marriage were transmuted into community property. Barbara claimed that Thomas withdrew $828,256.75 from one of the accounts and $930,366.71 from the other account, and asked the court to award her one-half of those withdrawals, or $879,311.73.

The trial court, however, did not find the evidence Barbara offered sufficient to support her claim. Instead, the trial court found that (1) before the marriage, Thomas used these two accounts as his personal checking and savings accounts, and after their marriage, Barbara's name was added to the accounts, which were used to pay both community and separate expenses, including joint living expenses, with Barbara writing most of the checks; (2) each party also paid certain of their own separate obligations from these accounts, which for Barbara included payment on her separate real property obligations, automobile and her children's expenses, and for Thomas included his spousal support obligations from prior marriages, the mortgage on his real property, and his children's expenses; (3) in addition to the initial balance of $231,000, deposits were made to the account during the marriage, including Thomas's employment earnings, funds from his separate property accounts and funds from Barbara's separate assets;

26.

(4) according to the testimony, the parties used these accounts as a conduit to pay both community and separate obligations; and (5) payment of separate obligations coincided with the deposit of separate property funds from another source by the party paying the separate obligation.

The trial court rejected Barbara's claim that the funds placed into the Tri Counties accounts from separate property sources should be considered community property that is not subject to Family Code section 2640 reimbursement claims. The trial court found that the provision was intended to transmute only the $231,000 in the Tri Counties accounts at the time of the Agreement's execution, and any additional funds that passed through these accounts would be subject to reimbursement under Family Code section 2640. Consequently, in issuing its judgment, the trial court designated as community property only the balance of the Tri Counties checking account at the date of separation, which was $760, which it awarded to Thomas in the division of community property.

Without citation to any legal authority, Barbara argues that the trial court's interpretation of the Tri Counties provision was the least favorable to her and that the trial court acknowledged the interpretation most favorable to her was to award her half of all deposits into the account. Barbara points to a bank statement that shows that from March to June 2006, $600,000 was deposited into one of these accounts. She asserts that even if the trial court did not wish to gift her one-half of all deposits into the account, at a minimum it should have awarded her half of the $231,000 expressly enumerated in the Agreement.

Barbara has not shown any error with respect to the trial court's rulings. To the extent she is asserting the trial court erred in its interpretation of the Agreement, she has forfeited the argument by failing to cite any legal authority, or make a cogent argument, to support her position. An appellate brief must "support each point by argument and, if possible, by citation of authority" (Cal. Rules of Court, rule 8.204(a)(1)(B)), and a party forfeits the right to appellate review of an argument where the party fails to cite

27.

applicable supporting authority  (*In re Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 (*Cairns*)).  To the extent she is challenging the trial court's factual findings, she again fails to set forth all the evidence in the record that supports those findings.  Accordingly, she has forfeited her substantial evidence argument.  (*Foreman*, *supra*, 3 Cal.3d at p. 881.)

### D.  The $1.3 Million

As we previously discussed, in her opening brief Barbara made a two paragraph argument in which she contended the trial court failed to characterize and divide the $1.3 million the parties deposited into the Joint Account.  Elsewhere in her opening brief, she implies that this failure occurred during the trial on the remaining issues.  She contends that under Family Code section 2550, the trial court was required to divide the community estate equally, and its "failure to characterize and divide this substantial portion of funds deposited into the joint bank account constitutes prejudicial error" as over $1 million deposited into the account came from "other sources including Barbara's own separate property."

Barbara's argument fails because the trial court did characterize and divide the money when it found that most of the funds in the Joint Account came from Barbara's separate property, she wrote all the checks on the account except for those related to the $8.2 million transfer, she "spent much of the money on the support of her children from her previous marriage," and the only funds left in the account, which the trial court awarded to her, were $20,530.  Barbara does not argue that there was not substantial evidence to support these findings.  Accordingly, her claim is without merit.

### III. The Attorney Fee Awards

In her post-trial opening brief, Barbara asked the trial court to award her attorney fees and costs.  Barbara submitted bills totaling $46,667.51 from her attorney in connection with the trial on the issue of the Agreement's validity.  Barbara argued that the trial court should not enforce the Agreement's attorney fees provision because Judge

Oglesby ruled that the provision was unenforceable, and the trial court should deem the provision unconscionable and refuse to enforce it as a matter of public policy. She further argued that if the trial court found the provision enforceable, Thomas' fees were not reasonable and he should not be entitled to more than the amount of her fees. She asserted that her attorney, a certified family law specialist, charged only $350 per hour while Thomas' attorney, not a specialist, charged $675 per hour. Moreover, his attorney's billing statements reflected substantial time for issues unrelated to the trial on the Agreement. Barbara contended Thomas' request for fees and costs must be denied because he did not provide a proper breakdown of attorney fees and costs. She also asked for attorney fees totaling $39,926.45 for the remainder of the proceedings pursuant to Family Code sections 2030 and 2032, based on the parties' relative circumstances.

In Thomas' post-trial opening brief, he asked the trial court to award him $295,935 in attorney fees pursuant to the Agreement's attorney fees provision. Thomas asserted the uncontested factual basis for his request was explained in his trial brief filed before the trial.[9] He further argued Barbara did not present at trial any evidence contesting the reasonableness of his fee request.

In her responsive brief, Barbara asserted that at the conclusion of the trial, it was agreed that attorney fees and costs would be addressed by declarations, yet Thomas did not file one. Barbara acknowledged that Thomas had included billing statements in his trial exhibits, but argued that he did not provide any foundation regarding the allocation of the fees between the bifurcated trial on the Agreement's validity and other work done on the case, or the reasonableness of the fees incurred. Barbara contended that without a

---

[9] The court docket shows that Thomas and Barbara filed trial briefs, income and expense declarations, and witness and exhibit lists on March 15, 2013 and March 20, 2013. With the exception of Barbara's expense declaration, which was entered into evidence at trial, the remaining documents are not in the appellate record, as Barbara did not designate them for inclusion.

breakdown of the fees, and evidence that she had the ability to pay such fees, an attorney fees award may not be made.

In ruling on the attorney fees requests, the trial court noted that there were two separate issues – Barbara's request for fees under Family Code section 2030 and Thomas' request for fees pursuant to the Agreement's attorney fees provision. With respect to the contractual provision, the trial court rejected Barbara's argument that Judge Oglesby previously found the provision unenforceable, as Judge Oglesby's written order does not contain any finding regarding the provision and instead states that he found the Agreement was not unconscionable. The trial court also rejected Barbara's argument that the provision was against public policy, noting that she did not cite any authority to support it, and under Civil Code section 1717, the losing party's financial circumstances are irrelevant to a contractual fee award.

The trial court stated that billing statements submitted by Thomas for legal work related to determining the Agreement's validity showed a total of 308.65 hours at $675 per hour, for a total requested award of $208,338.75. After reviewing the billing statements, however, the trial court determined that 61.7 of those hours were not reasonably related to the litigation over the Agreement's validity and reduced the total hours to 246.95. The trial court further explained that while the billing statements, which listed the attorney's hourly rate, were the only evidence of the reasonable value of services that Thomas presented, direct evidence need not be introduced, as the trial judge's knowledge and experience is sufficient. The trial court determined that the reasonable value of services was $350 per hour based on the general range of billing rates by attorneys practicing family law litigation in Kern County, and awarded Thomas the sum of $86,432.50 for reasonable attorney fees as the prevailing party on the litigation over the Agreement's validity.

With respect to Barbara's request for fees under Family Code section 2030, the trial court found there was a clear disparity in income, as Barbara's most recent income

as a substitute teacher was $1,200 per month while Thomas' monthly income was estimated to be $30,000 per month, and that absent an award of attorney fees, she would not have sufficient financial resources to adequately present her case. The trial court found Thomas had significant income and assets, and could afford to pay both his and Barbara's fees. The trial court found the $39,926.45 that Barbara claimed as fees to be reasonable and noted that when this amount was added to the $66,700 Thomas previously paid to Barbara for attorney fees pursuant to pendent lite orders, her total fee award was $106,626.45. The trial court, however, further noted that this amount included the $46,667.51 that Barbara incurred due to the litigation over the Agreement's validity, and explained that given its decision that Thomas was entitled to attorney fees under the Agreement, Barbara's fee award must be reduced by that amount. Since excluding those fees made her attorney fee award approximately equal to the fees Thomas already had paid her, the trial court determined that Thomas had no obligation to pay Barbara anything further in attorney fees.

On appeal, Barbara raises several challenges to the trial court's attorney fees award. She contends the trial court committed reversible error by (1) ignoring her need and ability to pay when awarding Thomas' fees under the Agreement's attorney fees provision; (2) reducing her need-based fee award by the amount of fees she incurred on the litigation over the Agreement's validity; (3) finding the fees awarded to Thomas were reasonable; (4) "overruling" Judge Oglesby's "finding" that the attorney fee provision was invalid; and (5) failing to find the provision invalid as a matter of law.

We begin with the last two issues concerning the validity of the Agreement's attorney fees provision. While Barbara asserts that Judge Oglesby found the attorney fee provision invalid, we disagree with her characterization of the record. In announcing his decision from the bench, Judge Oglesby specifically stated that, while he "find[s] in the area of matrimony that . . . taking away the Court's discretion to, essentially, level the playing field on marital issues . . . is inappropriate as such and an unconscionable term of

31.

the agreement[,]" he also stated that this was an "indicated decision[,]" not a ruling.[10] Significantly, Judge Oglesby's written order does not state that he found the provision unconscionable; instead, he states that he found the Agreement to be valid and enforceable, and "<u>not</u> unconscionable."

A trial judge's pre-judgment oral expressions do not bind the court or restrict its power to later declare conclusions of law in the judgment; instead, the trial court retains the inherent authority to change its conclusions of law at any time before entry of judgment and the resulting judgment supersedes any oral comments from the bench. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268) Moreover, a trial judge's oral comments "'may never be used to impeach the order or judgment.'" (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646, italics omitted.) Since Judge Oglesby did not incorporate his oral comments into the resulting order on the Agreement's validity, there was no order that required Judge Schuett to find the attorney

---

**10** Judge Oglesby began his oral pronouncement by stating that, while it had not really been brought up, he had an issue with the Agreement's "limitations on attorney's fees." Judge Oglesby explained: "Normally attorney's fees are matters that are subject to general contract. There are some areas where it's appropriate for prevailing parties to pay attorney's fees or parties to contract to pay attorney's fees, but I find in the area of matrimony that a limitation on – in any fashion taking away the Court's discretion to, essentially, level the playing field on marital issues, whether it's involved in a premarital agreement or otherwise, essentially is inappropriate as such and an unconscionable term of the agreement. [¶] And by that, I'm giving a heads-up that I'm kicking the door open on the other issue that has its head lurking out there, and that is the civil lawsuit, so . . . and I do agree; I've read the parties' paperwork that they filed today that – as I've indicated before, I do see that there is a nexus between these two. It's very clear to this Court, and I'm inclined to award necessary attorney's fees in the family law setting despite a civil filing, despite a marital settlement agreement provision on that. [¶] Those are indicated decisions. My ruling, which I've spent some time going over with on the enforceability or validity of the martial settlement – premarital agreement is the Court's ruling, but on the issue of the amount of support being unconscionable and the attorney's fees provision being unconscionable, the Court's indicated."

fees provision unconscionable and he did not "overrule" Judge Oglesby in finding the provision enforceable.[11]

Barbara contends that even if Judge Oglesby's statements did not bind the trial court, nevertheless the attorney fee provision is invalid because (1) it violates the fundamental principle underlying the public policy found in Family Code section 270[12] that requires the court to determine the party's ability to pay before ordering that party to pay attorney fees or costs, and (2) Family Code section 271[13] provides a remedy for an aggrieved spouse who is required to defend the validity of an agreement designed to protect that spouse. Other than citing these statutes, Barbara does not cite any authority to support her contention that either statute invalidates a contractual attorney fees provision. Accordingly, she has forfeited the right to appellate review by failing to cite applicable supporting authority. (*Cairns*, *supra*, 188 Cal.App.4th at p. 949.)

Moreover, contrary to Barbara's contention, the trial court was not required to consider her relative ability to pay in determining the fee award pursuant to

---

[11] The sole case Barbara relies on, *Robert v. Stanford University* (2014) 224 Cal.App.4th 67 (*Robert*), does not apply here. There, the appellate court held that the trial court's failure to make express written findings demonstrating it applied the proper standard when it made an attorney fee award, as required by Government Code section 12965, subdivision (b), was harmless error where the trial court made express oral findings that demonstrated it applied the correct standards. (*Robert*, *supra*, 224 Cal.App.4th at pp. 71-72.) This holding does not apply to an issue of whether the trial court is bound by an indicated ruling.

[12] Family Code section 270 provides: "If a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay."

[13] Family Code section 271 provides in pertinent part: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction...."

33.

Family Code section 270. The trial court awarded attorney fees and costs to Thomas as the prevailing party on a contractual dispute, pursuant to Civil Code section 1717, not under the Family Code. Thus, the trial court was not required to consider Barbara's relative ability to pay in determining the amount of the award. (See *In re Marriage of Sherman* (1984) 162 Cal.App.3d 1132, 1140 [because attorney fee award "emanated from the contractual relationship of the parties and not from their relationship under the Family Law Act," the trial court did not err by precluding husband from introducing evidence regarding his ability to pay the award]; see also Raye & Pierson, 2 Cal. Civ. Prac., Family Law Litigation, (2003) § 10:6 [where marital agreements specify that the prevailing party is entitled to recover reasonable attorney's fees and costs in any action for breach of the agreement, "fees and costs [are] recoverable as 'costs of suit' under Civ. Code § 1717, and the prevailing party may recover without any showing of need and ability to pay"]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2011) ¶ 14:275 [Family Code fee statutes inapplicable where "parties have agreed to a recovery of fees and costs in an action arising under the contract, [because] the contract itself provides an alternative basis for fees and costs award[ed]"].)

Barbara next contends the trial court abused its discretion when it deducted from her award the amount she was advanced to pay her attorney fees for pursuing the litigation over the Agreement's validity. We disagree, since, as the trial court found, an award of fees to Barbara for challenging the Agreement's validity would be contrary to the purpose of an attorney fees provision which awards fees to the prevailing party and render the award of fees to Thomas under that provision meaningless. The cases Barbara cites to support her argument, *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295 and *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, are inapplicable here, as they involved attorney fee disputes under the Family Code, not an attorney fee award based on contract, pursuant to Civil Code section 1717.

Finally, Barbara contends the trial court abused its discretion in determining the amount of fees to award Thomas under the attorney fees provision because it had no competent evidence from which to evaluate whether his attorney's "skill and effort were wisely devoted to the expeditious disposition of the case." Although Barbara recognizes that a trial judge may determine the reasonable value of services based on his or her own knowledge and experience,[14] she argues this is true only where the trial judge actually presided over the proceeding in question or has a vast amount of experience in the area of law at issue. Pointing out that Judge Schuett, who awarded the fees, was not the judge who presided over the proceedings concerning the Agreement's validity, she argues "it is impossible for even the most seasoned trier of fact to properly assess the reasonableness of attorney's fees and costs incurred in proceedings held before another trial judge with nothing more than a series of unauthenticated billing statements." Accordingly, Barbara argues the trial court's decision to adjust Thomas' attorney's rate to $350 per hour was arbitrary. She also argues the fees awarded were unreasonable because they were nearly double the $46,667.51 she incurred in the same proceeding.

A request for attorney fees in a marital dissolution action is left to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. (*In re Marriage of Huntington* (1992) 10 Cal.App.4th 1513, 1523.) The trial court possesses "broad authority to determine the amount of a reasonable fee" for attorneys. (*PLCM Group v. Drexler* (200) 22 Cal.4th 1084, 1095.) Trial courts possess their own expertise in determining the value of legal services and may make such a determination "'contrary to, or without the necessity for, expert testimony.'" (*Id.* at p. 1096.) "We may

---

[14] See *Frank v. Frank* (1963) 213 Cal.App.2d 135, 137 ["The California courts have repeatedly held that testimony or other direct evidence of the reasonable value of attorney's services need not be introduced because such evidence is necessarily before the trial court which hears the case. [Citations.] The knowledge and experience of the trial judge afford a sufficient basis for fixing the amount of a lawyer's fee, even though there was no specific evidence on the subject."]

overturn the trial court's award only if "'no judge could reasonably'" have made it." (*In re Marriage of O'Connor* (1997) 59 Cal.App.4th 877, 884.)

Barbara has not carried her burden on appeal to show the trial court abused its discretion in reducing the hourly rate of Thomas' attorney to $350 per hour or in determining the number of hours of work reasonably expended on the litigation. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Ballard*, *supra*, 41 Cal.3d at p. 574 [appellant has burden to affirmatively show reversible error].) She cites absolutely no legal authority for her assertion that it was impossible for Judge Schuett to assess the reasonableness of the fees incurred based solely on the billing statements, and therefore forfeits her argument. (*Cairns*, *supra*, 188 Cal.App.4th at p. 949.) More importantly, while Barbara contends the record on appeal does not justify the fee award, citing *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 871, she has failed to supply us with an adequate record to review her claim, as neither the billing statements, nor Thomas' trial brief in which he argued for the award of fees, are in the record. Accordingly, the issue must be resolved against her. (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296.)

In sum, Barbara has not shown any error with respect to the trial court's award of attorney fees.

IV. Barbara's Due Process Claims

Barbara challenges several other matters that took place during the proceedings. Specifically, she contends reversal is required because: (1) she was denied a fair trial due to the trial court's refusal to grant her motion to compel Thomas to produce a copy of the Hardt Trust and all bank statements from the Banc of America account from January 1, 2008 to December 31, 2008; (2) the trial court refused to render a statement of decision on controverted issues of material fact; (3) the trial court abused its discretion and denied her a fair trial by refusing to compel Thomas to serve a declaration of disclosure that complied with Family Code section 2107; and (4) the trial court did not have jurisdiction

to confirm or award Thomas his separate property, attorney fees and costs, or an equalizing payment, because he did not verify his response to her petition for dissolution.

A.  The Motion to Compel

On May 25, 2012, after the trial court issued its tentative decision in the bifurcated trial on the characterization of the $8.2 million, Barbara served Thomas with a request for production of documents in which she asked him to produce copies of the Hardt Family Trust and Banc of America statements for 2008 that were referenced in Thomas' declaration filed in response to Barbara's motion to bifurcate.  Thomas objected to both requests on the grounds that (1) producing the Hardt Family Trust document violated his right of privacy, (2) the bank statements were provided to Barbara's prior counsel in March 2011, and (3) all the documents were relevant only to the prior trial, which was no longer before the court.

The attorneys for both sides exchanged letters concerning the document request. In a letter to Thomas' attorney, Barbara's attorney explained that because the trial court had ruled that any funds Thomas held in his trust did not fall within the Agreement's scope, it was necessary to "definitively trace the funds[,]" and without the trust document, there was no way to know what assets were held in the trust and whether its assets "may have spilled into the various accounts during marriage."  Barbara's attorney further asserted that "records in the white binder" that were previously produced were "insufficient" and did not fall within the scope of the document request.

Thomas' attorney responded that: before Barbara could make a community property claim to Thomas' assets, she needed to first show some relationship between the asset and a possible community property source; based on the Agreement, the only possible community property source was money either party voluntarily deposited into certain joint accounts; the only joint accounts into which Thomas ever deposited money during the marriage were the Tri Counties accounts, the documentation for which had already been provided; while Barbara created multiple joint accounts during the marriage,

Thomas was not claiming a community property interest in them, and excluding the $8.2 million transfer, he did not transfer any funds into them; and to the extent he may have transferred funds into them, he was not asking for reimbursement and was allowing Barbara to keep them. Thomas' attorney did not see how analyzing what Hardt Trust money was deposited into the joint accounts was relevant to any issue in the marital dissolution proceeding. Accordingly, he refused to produce the documents unless Barbara's attorney (1) specifically identified the documents that had not been previously provided, and (2) provided a logical explanation as to how the documents were relevant to the case or could help Barbara.

Barbara's attorney responded that because the court effectively ruled that any assets held by the trust and transferred to any of the various accounts were not governed by the Agreement, a copy of the trust was needed to differentiate between funds that fall within the Agreement and funds that fall outside of it. He further asserted that none of the Banc of America statements were in the documents provided.

On August 13, 2012, Barbara filed a motion to compel production of the documents. Barbara argued Thomas could not resist disclosure of personal financial information by resting on a right to privacy objection, the bank statements had not been produced previously, and the documents were relevant since the trial court ruled assets belonging to the Hardt Trust were not governed by the Agreement, thereby making the Hardt Trust the "dispositive instrument" in determining the character of commingled funds in joint bank and brokerage accounts, and even without the ruling, the documents may lead to the discovery of admissible evidence.

In his opposition to the motion, Thomas argued the discovery was at best relevant only to issues the court had resolved by means of the bifurcated trial, and the right to discovery with regard to those issues ended 30 days before the bifurcated trial. He asserted that once the trial ended, without a specific court order, further discovery was

38.

prohibited and the request for discovery was improper and beyond the court's jurisdiction.

At the September 25, 2012 oral argument on the motion, Barbara's attorney admitted that he had received all of the records for the joint accounts that were listed in the Agreement, but he asserted he did not know the source of the funds going into and out of those accounts, and he needed the bank statements and trust document to determine this. Thomas' attorney stated that everything is separate property under the Agreement except money put into a joint account during marriage, which may be subject to reimbursement, and because Barbara had been provided all of those bank statements, it is unclear what possible relevance Thomas' separate property accounts could have to the case. He asserted that essentially the documents were being requested because Barbara's attorney stipulated to facts he now wanted to reconsider, and therefore the request was untimely, as it was made after the bifurcated trial. The trial court took the matter under submission.

On December 17, 2012, the trial court issued its ruling denying the motion to compel on the ground that the requested documents were not relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. It appeared to the trial court that Barbara's request was triggered by its ruling on the bifurcated issue of the proper characterization of the $8.2 million transfer. The trial court explained that the stipulated facts were the key to determining the propriety of the discovery request, which were deemed conclusive on the parties since the trial court denied Barbara's request to set aside the Stipulated Order. The trial court noted that the parties stipulated that Thomas established the Hardt Trust, which held significant assets for the benefit of Thomas and his family members, and at the time of the marriage, most of the trust's liquid assets were held in the Banc of America brokerage account. The trial court determined that since its prior judgment was necessarily based on the trust's validity, Barbara could not challenge the trust after judgment had been rendered.

39.

The trial court stated that Barbara's argument that its ruling effectively replaced the Agreement with the Hardt Trust as the governing document disposing of the marital property mischaracterized the import of its ruling. The trial court explained that its characterization of the trust assets was based on the stipulated facts, which addressed the sole issue of the nature of the transaction involving the use of the Joint Account as the conduit for the transfer of the trust funds, and its ruling was limited to that set of facts and did not impact the prior ruling on the Agreement's validity. Accordingly, the trial court did not accept this argument as a reason to expand the notion of relevance for discovery purposes. The trial court further explained that because the deposit of funds into the Hardt Trust was irrelevant to whether the funds were community assets, since community property could only be created by voluntary transfer to a joint account with the specific purpose of creating community property, the bank statements were irrelevant.

On appeal, Barbara contends the trial court abused its discretion in denying the motion to compel because (1) without the trust document, she had no way to verify if the Hardt Trust actually existed, what property was held in the trust, and what property the Agreement covered, and (2) without the bank statements, she could not trace funds to determine where money went that Thomas took from the parties' joint bank accounts. Citing to Family Code sections 2100 and 2102, Barbara argues that Thomas' refusal to comply with her document request violated his fiduciary duties of disclosure and the public policy favoring "cooperative discovery" in marital dissolution proceedings. She asserts that the trial court's nearly three month delay in issuing its decision, coupled with its failure to grant the motion, "unfairly placed her at both a tactical and financial disadvantage and constitutes an abuse of discretion warranting reversal."

Assuming without deciding that the trial court abused its discretion in denying her motion to compel, reversal is not warranted because Barbara has failed to show how the alleged error caused her prejudice. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Barbara does not direct us to anything in the record to support

40.

a finding of prejudice. Absent such a showing, we must presume any error was harmless. (*Ibid.*)

B. The Statement of Decision

Before the March 2013 trial, Barbara filed a request for a statement of decision on all reserved issues, in which she asked the trial court to issue a statement of decision on 68 "principal controverted issues." On appeal, she argues the trial court "ignored many key outstanding issues" in the statement of decision it ultimately issued, and lists three of those issues.[15] Citing to cases which state the rule that a trial court's failure to issue a timely requested statement of decision is reversible error, *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294, and *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 282, she argues that the trial court's refusal "to render a statement of decision on controverted issues of material fact" constitutes per se reversible error.

Barbara's argument for per se reversal fails, however, because here the trial court did issue a detailed statement of decision. Moreover, the trial court was not required to address every issue listed in Barbara's request. In rendering a statement of decision under Code of Civil Procedure section 632, a trial court must explain "'the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial[.]'" (*Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745, quoting Code Civ. Proc., § 632.) "A statement of decision need not address all the legal and factual issues raised by the parties. Instead, it need do no more than state the grounds upon which the

---

**15** The issues she claims the trial court ignored are: (1) whether Thomas breached his fiduciary duty by admittedly forging Barbara's signature on a $356,177.31 check representing the proceeds of the sale of her separate property residence on 20th Street and failing to return the funds to her; (2) whether Probate Code section 5305 applies to funds the parties held in any joint bank account during the marriage; and (3) whether Thomas transmuted his separate property Banc of America funds valued at $2.6 million and a residence located on Knotty Pine Drive in Incline Village, California, into community property through an amended Hardt Family Trust.

41.

judgment rests[.]" (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 (*Muzquiz*).)

The statement of decision issued by the trial court here was more than adequate. It set forth the trial court's fundamental findings as to each item the parties requested the court to characterize and divide. With respect to the three "material" issues Barbara claims the trial court ignored, we conclude all are merely evidentiary issues that need not be included, as the trial court issued findings as to the broad issues of whether Thomas breached his fiduciary duty, whether he properly accounted for the proceeds from the sale of the 20th Street property, whether the community was entitled to reimbursement from Thomas' separate property, and the character and division of the joint bank accounts. A statement of decision need address "'only ultimate rather than evidentiary facts because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them.'" (*Muzquiz, supra,* 79 Cal.App.4th at p. 1125.) There is no error.

C. The Declaration of Disclosure

In June 2011, Thomas completed a preliminary declaration of disclosure. At the beginning of the March 2013 trial, the trial court addressed Barbara's objection to a final declaration of disclosure that Thomas apparently submitted. Barbara's attorney argued that the final declaration of disclosure, as well as the schedule of assets and debts, was incomplete, vague, ambiguous, and lacking in any attachment, and therefore limited Barbara's ability to present evidence. Barbara's attorney asked the trial court to either order Thomas to complete the disclosure or preclude him from bringing in additional evidence beyond that set forth in the exhibits concerning financial disclosures to which the parties already stipulated.

The trial court replied that if it read "the paperwork" correctly, the last exchange of letters on the issue was on November 1, 2012, and asked why there was a delay in taking the matter up. Barbara's attorney responded that the duty to disclose was a

42.

continuing one and he hoped that an adequate disclosure would have been provided. Thomas' attorney asserted the documentation was not relevant to the issues at trial, which involved the division of community property, and that Thomas did fill out an updated income and expense declaration in connection with the hearing, which disclosed all information regarding all community property. After further argument by the attorneys, the trial court found the declarations were complete and denied Barbara's request for further information.

Barbara contends the trial court abused its discretion and denied her a fair trial by refusing to compel Thomas to serve a declaration of disclosure that complied with Family Code section 2107. The argument fails, however, because Barbara has not provided us with an adequate record to review her claim. The final declaration of disclosure that she contends was deficient is not in the record; neither is the "paperwork" that the trial court reviewed when deciding the matter. Accordingly, the issue must be resolved against her. (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296.)

D. The Lack of a Verified Response

On September 10, 2012, Thomas filed a response to Barbara's request for dissolution of marriage. The response was verified by Thomas' attorney, who declared under penalty of perjury that Thomas was absent from the county and therefore he was making the verification on Thomas' behalf. According to Barbara, Thomas was shown this document at his deposition, and he said he did not recognize it.

Citing only to Family Code section 212, which provides that a response filed with the court under the Family Code "shall be verified[,]" Barbara asks us to decide, "as a matter of first impression" whether the court had jurisdiction to confirm or award Thomas his separate property, attorney fees, and an equalizing payment because Thomas failed to verify the response.

We decline Barbara's invitation. First, she cites no authority to support her assertion that a failure to verify a response is jurisdictional. To the contrary, the purpose

43.

of the verification requirement is to assure the good faith of the allegations contained in the paper. (*In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 825.) When an attorney verifies the paper, the court may permit the paper to stand, and "[t]he absence of any complaint concerning the verifying party's good faith renders meritless any contention pertaining to the verification." (*Ibid.*) Barbara does not argue that Thomas' attorney's allegations lacked good faith.

Moreover, Barbara does not point to anywhere in the record that she objected to the response on the ground it was not properly verified, and therefore has forfeited any objection. (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 939-940 [attorney's failure to object to income and expense declaration on the ground it was not properly verified waives the objection].) Since Barbara failed to object, her reliance on *DeCamp v. First Kensington Corp.* (1978) 83 Cal.App.3d 268, 274-275, is misplaced, as there the plaintiff moved to strike an answer that was verified by the defendant's attorney and the trial court found that the defendant was not unable to verify the answer himself.

## DISPOSITION

The trial court's judgments are affirmed. In the interest of justice, the parties shall bear their own costs on appeal.

_____
GOMES, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
SMITH, J.


44.